191 So.2d 40 (1966)
Ellen Morgan HOLL, an Incompetent, by and through Her Husband and Guardian, William E. Holl, Individually, and Central Bank & Trust Co., Substituted Guardian, Petitioners,
v.
Leroy E. TALCOTT, Jr., Donald Andrus, George C. Austin and Victoria Hospital, Inc., Respondents.
No. 34239.
Supreme Court of Florida.
June 1, 1966.
Rehearings Denied October 19, 1966.
*42 Nichols, Gaither, Beckham, Colson & Spence and Robert Orseck, Miami, for petitioners
Carey, Terry, Dwyer, Austin, Cole & Stephens and Edward A. Perse, Miami, for respondents Leroy E. Talcott, Jr., and Donald Andrus.
Cecyl L. Pickle and Knight, Underwood, Peters & Hoeveler, Miami, for respondent Victoria Hospital, Inc.
Blackwell, Walker & Gray and James E. Tribble, Miami, for respondent George C. Austin.
O'CONNELL, Justice.
This cause was initiated as a malpractice action alleging failure to recognize and treat a urinary tract infection; to exercise reasonable care in the performance of surgery, resulting in the patient's contraction of encephalitis; to exercise reasonable care in supervising the operation and in administering the anesthesia and medications relative thereto; to diagnose and treat the patient's encephalitic condition; and properly to administer post-operative medication and to supervise post-operative care and treatment. The defendants were Talcott and Andrus, the surgeons; Austin, the anesthesiologist; and the hospital.
Each of the defendants moved for summary judgment and submitted in support thereof affidavits purporting to show that there had been no departure from accepted standards applicable to the services performed by each of them respectively. In opposition to the motions for summary judgment, the plaintiffs submitted a lengthy affidavit of Dr. Graubard, a New York surgeon and medical expert. The defendants then moved to strike the affidavit of Dr. Graubard on grounds of legal insufficiency. The trial court granted the motions to strike and the motions for summary judgment simultaneously, and entered summary final judgment for the defendants.
Plaintiff subsequently moved for rehearing or, alternatively, to reopen the judgment to permit the submission of additional affidavits designed to cure any defects in the first one. After hearing, at which a proposed new affidavit was proffered, the plaintiff's motion for rehearing was denied and the proffer of the affidavit refused.
The District Court of Appeal, Third District, affirmed in an opinion published at 171 So.2d 412, and petitioners seek review here by certiorari. In this opinion the petitioners will be referred to as plaintiffs and the respondents as defendants.
Plaintiffs' principal assertion of jurisdictional conflict is with the decision of the District Court of Appeal, Second District, in Matarese v. Leesburg Elks Club, Fla.App. 1965, 171 So.2d 606. They contend that the decision under review is also in conflict with Humphrys v. Jarrell, Fla.App. 1958, 104 So.2d 404, and Williams v. Board of Public Instruction, Fla. 1962, 61 So.2d 493. We agree that there is sufficient conflict between the decisions cited and the one under attack here to justify our taking jurisdiction.
In the decision under review the language and format of the opinion seem to us to hold that once there is a motion for summary judgment that is supported by affidavit or other factual showing, the burden shifts to the opposing party to show by appropriate means that genuine and material issues do remain to be tried. Thus, after reproducing the statement of the case from the brief of the plaintiff-appellant in that court  which statement understandably contains *43 no challenge of the sufficiency of the movant's affidavits  the district court continued,
"It is readily apparent that the propriety of the trial court's granting of the motions for summary judgment must turn upon a determination of the legal sufficiency of the affidavit of Dr. David Graubard. * * *"
Our conclusion concerning the import of the opinion below is reinforced by a reading of Hardcastle v. Mobley, Fla.App. 1962, 143 So.2d 715, strongly relied on herein, and also of other cases that were cited favorably in Hardcastle. Herring v. Eiland, Fla. 1955, 81 So.2d 645 and Pritchard v. Peppercorn and Peppercorn, Inc., Fla. 1957, 96 So.2d 769. In the Hardcastle case, supra, the same court that handed down the decision herein said, at 143 So.2d 717:
"It is not sufficient in defense of a motion for summary judgment to rely on the paper issues created by the pleadings, but it is incumbent upon the party moved against to submit evidence to rebut the motion for summary judgment and affidavits in support thereof or the court will presume that he had gone as far as he could and a summary judgment could be properly entered."
A passage from the opinion in the Pritchard case, supra, which was decided on the authority of Herring, will suffice to show the relevance of both cases here:
"In Herring v. Eiland, Fla. 1955, 81 So.2d 645, we held that where a plaintiff fails to present affidavits in support of the allegations of the complaint, or in the alternative affidavits in opposition to a motion for summary judgment showing reasons why essential facts could not be presented by contesting affidavits, then all that the trial judge has before him for consideration are the unsupported complaint and the depositions or affidavits of the movant for the summary judgment. If such depositions and affidavits under these circumstances reveal no cause for complaint it is proper to enter a summary judgment for the defendant."
We believe that the position apparently taken in the opinion herein and in the other cases just cited is faulty and in conflict with the decisions cited by the plaintiffs, as well as with many others. As this court and other appellate courts have repeatedly held, the burden of proving the absence of a genuine issue of material fact is upon the moving party. Until it is determined that the movant has successfully met this burden, the opposing party is under no obligation to show that issues do remain to be tried. Humphrys v. Jarrell, supra; Matarese v. Leesburg Elks Club, supra; and Harvey Building, Inc. v. Haley, Fla. 1965, 175 So.2d 780.
This means that before it becomes necessary to determine the legal sufficiency of the affidavits or other evidence submitted by the party moved against, it must first be determined that the movant has successfully met his burden of proving a negative, i.e., the non-existence of a genuine issue of material fact. Matarese v. Leesburg Elks Club, supra. He must prove this negative conclusively. The proof must be such as to overcome all reasonable inferences which may be drawn in favor of the opposing party. Harvey Building, Inc. v. Haley, supra.
The proper rule on this subject was well applied in the Matarese case. There the District Court of Appeal, Second District, reversed a summary final judgment entered against a plaintiff, not because it found the movant-defendant's affidavits were successfully met by the opposing party-plaintiff, but because the movant's affidavits and other evidence did not establish the absence of genuine triable issues of material fact.
The rule simply is that the burden to prove the non-existence of genuine triable issues is on the moving party, and the burden of proving the existence of such issues *44 is not shifted to the opposing party until the movant has successfully met his burden.
We come then to the merits. Plaintiffs argue that the trial court committed error in three instances: first, in entering summary judgment in favor of the defendants on the ground that no genuine issue of fact existed as to the liability of the defendants; second, in striking the original affidavit of Dr. Graubard; and, third, in denying the petitioner's motion to vacate the summary final judgment and refusing to receive the new affidavit of Dr. Graubard as proffered. We have concluded that the trial court did commit error in each of these instances.
We have carefully considered the motions for summary judgment and the supporting affidavits of the defendants. We have read portions, but not all, of the almost 1000 pages of the record before us. The affidavits of the surgeons, Drs. Talcott and Andrus, are identical except for the names of the affiants. Each covers two and a half legal size pages including the style of the cause. Boiled down to essentials, these affidavits simply state that the operation performed by the surgeons was done after proper and usual tests and in accordance with accepted medical standards and that the post-operative care and visits were also rendered in keeping with such standards. The affidavits state that the surgical post-operative course of the patient was uneventful until about 48 hours after the operation when Mrs. Holl demonstrated abnormal neurological symptoms; that the complications presented were in the field of internal medicine and were treated as recommended by two specialists. The affidavits end with a final declaration that all that was done to and for the patient was consistent with accepted medical standards.
The affidavit of Dr. Austin, the anesthesiologist, is of the same length but somewhat more detailed as to what he did in preparing the patient for anesthesia and administering it. According to this affidavit the anesthesia was effective and uneventful as was the patient's recovery therefrom. Dr. Austin also related that on September 12, 1959, two days after the operation, he was called to the patient's room to find her in extreme distress and that he took heroic measures to restore her vital signs, meanwhile advising Dr. Talcott of her condition. The affidavit concludes that all the affiant had done was in full accord with accepted standards and that he was not guilty of negligence or malpractice.
The fourth defendant-respondent, the hospital, filed four affidavits in support of its motion for summary judgment. One, signed by Dr. Talcott, merely stated that the complaint against the hospital was without support and that the hospital performed all of its functions in accord with accepted practices. Another signed by the hospital administrator stated that the hospital staff and employees were properly instructed and administered; that there was no failure on the part of the hospital and its staff to communicate to the patient's doctors pertinent information concerning the patient's operation, treatment, and condition or to furnish laboratory data; that the hospital used reasonable care in selecting, directing, and supervising its staff; and that no person under the control of the hospital did anything resulting in injury or damage to the plaintiffs. A third affidavit was given by a hospital dictician which stated that all dishes and glassware used in the hospital during the time Mrs. Holl was there were properly sterilized. A fourth affidavit by the nurse in charge of the sterilization of instruments at the hospital stated that all instruments were properly sterilized.
The plaintiffs do not here specifically question whether the respondents' affidavits were sufficient, considered with all other matter in the record, to show conclusively the absence of genuine issues of material fact. Nevertheless, plaintiffs do argue that the trial court erred in granting summary judgment. Further, in measuring the adequacy of the plaintiff's affidavit, viewed with the record, it is necessary *45 that we consider the defendants' affidavits in order to determine what plaintiffs were required to rebut.
As we view the affidavits of the defendants, considered with the record, they do not in themselves demonstrate conclusively that the respondents were not guilty of malpractice so as to justify a determination that as a matter of law there was no genuine issue of material fact necessary to be tried.
As is to be expected in the complicated medical situation presented here, the respondents' affidavits did not detail everything that the respondents did or all the medical treatment that was administered to Mrs. Holl. The affidavits did not undertake to explain what did cause Mrs. Holl to be reduced to the vegetable state so as to remove all doubt that the result was caused by their negligence as claimed by the petitioners. To some extent, the affidavits countered the charges of negligence laid in the complaint, and then each stated that what was done by the named defendant was in accord with accepted practice and standards in the community.
To the extent that the affidavits counter the charges of the complaint they seem to us to constitute little more than a plea of not guilty. The statements that all done was in accord with accepted practice and standards in the community are subject to the same criticism that the respondents levy against Dr. Graubard's affidavit, i.e., that they are "net opinions." As defined by some of the respondents, such an opinion "is a naked assertion  unsupported by an expert medical explanation of its basis or the reason it was reached. * * *" We conclude that considering all applicable rules and principles the respondents as movants did not meet the burden of demonstrating conclusively the absence of genuine issues of material fact. This being so the sufficiency of the petitioners' affidavit should never have been reached.
Even if we were to reach a contrary conclusion and find that the respondents' affidavits were sufficient to shift the burden to the petitioners to show the existence of genuine issues, we conclude that Dr. Graubard's affidavit, read together with the record and considered in the favorable light required to be accorded it, was sufficient to show that there were genuine fact issues which could be and should be settled only by a trial.
The district court stated in its opinion that Dr. Graubard's affidavit was deficient on three grounds: (1) it failed to state what was wrong with petitioner; (2) it offered no medical explanation for the affiant's charges that the enumerated actions of the respondents were negligence and a departure from requisite standards of care; and (3) it failed to connect the alleged acts of negligence with the resulting injury to Mrs. Holl. It is true that Dr. Graubard's affidavit did not state just what was wrong with Mrs. Holl; however, the complaint alleged and the record shows that it was encephalitis. Thus, it does not appear to us that the failure to describe this condition in the affidavit was fatal.
As to the second deficiency, we do not think it was ever intended that in a complicated case such as this one, the opponent of a motion for summary judgment be obligated to have his expert witness cover all the details and formalities that would be required in offering the same experts' testimony at a trial of the cause. To do so would turn the summary judgment process itself into a trial of, rather than a search for, issues. This does not mean that the evidentiary matter submitted in opposition, including that offered in an affidavit, should not be of the kind which would be admissible in evidence at a trial. The evidentiary matter offered must be both relevant and competent as to the issues in the cause. But it need not be in the exact form, or cover all the preliminaries, predicates, and details which would be required of a witness, particularly an expert witness, if he were on the stand at the trial. Dr. Graubard's affidavit stated *46 that he had reviewed the hospital records and the depositions of the defendants and that he had examined Mrs. Holl and that based thereon it was his opinion that the enumerated actions were malpractice. It is true that he did not explain why each of the enumerated acts were negligent or detail the standards of care that were breached. However, we do not think this was required. In their affidavits, the defendants did not detail all that they did in treating the patient and show that each act was in accord with accepted practice. Again, if the plaintiffs' affidavit was deficient in this regard, the defendants' affidavits were equally deficient.
As to the last deficiency it seems to us that paragraph 12 of the affidavit adequately connects the alleged acts of malpractice and Mrs. Holl's condition. This paragraph reads, in part:
"12. Based on a reasonable degree of medical certainty the foregoing acts * * * proximately activated, aggravated and/or accelerated the injuries to the person of Ellen Morgan Holl for which she claims damages herein."
In essence, as it existed on the motion for summary judgment, this case presented a situation in which the defendants by affidavits set forth some, but not all, of the things they did and averred that what they did was not negligent. The plaintiff then filed a lengthy affidavit enumerating allegedly negligent actions of the defendants which caused Mrs. Holl's condition. Rather than showing an absence of triable issues, we think these proceedings demonstrated that genuine issues of fact material to the decision of the cause did remain to be tried.
Some may take what we have said here to mean that it will be virtually impossible for the defendant ever to obtain a summary judgment in a malpractice suit. We will not speculate as to how this opinion may be interpreted. We do say that it is not intended to outlaw summary judgment proceedings in such cases. There undoubtedly will be cases in which the issues are so clear, the proof of nonnegligence so obvious, or the causes of injury to the patient so clearly shown not to be the fault of the practitioner that no trial is required. In such cases summary judgment ought to be granted.
However, we do agree with those other decisions which hold that summary judgment procedures should be applied with special caution in negligence actions. Cellini v. Moss, 1956, 98 U.S.App.D.C. 114, 232 F.2d 371; Berry v. Atlantic Coast Line R. Co., 4th C.A. 1960, 273 F.2d 572. This is particularly true in malpractice suits where, as here, the attending facts are peculiarly within the knowledge of the movants and the showing of negligence is generally dependent upon expert testimony as to the standard of care required and observed.
What we have already said makes it unnecessary for us to decide the plaintiff's last point which urges that the trial court erred in refusing to vacate the summary judgment and in refusing to accept the proffered second affidavit of Dr. Graubard. Nevertheless, we feel constrained to observe, through the license of obiter dictum, that the presumptions which favor the party moved against continue and must be applied throughout the entire consideration of a motion for summary judgment. Not only should the opposing party's papers be liberally read and construed, as opposed to a strict reading of the movant's papers, but this same favorable weighting of the balance should have attended action on the petitioner's subsequent motion for rehearing and motion to vacate the summary judgment and receive the new affidavit which petitioners urged would correct any deficiencies of the first one.
The granting or denial of rehearing is a matter within the sound discretion of the trial court, but it is never an arbitrary discretion. Blue v. Blue, Fla. 1953, 66 So.2d 228. As indicated above, when the motion *47 is filed by one against whom a summary judgment has been entered, the discretion not to grant is narrowed and every disposition should be indulged in favor of granting the motion. Only after it has been conclusively shown that the party moved against cannot offer proof to support his position on the genuine and material issues in the cause should his right to trial be foreclosed.
While the trial court did not, in its order granting summary judgment in this cause, indicate what deficiencies existed in Dr. Graubard's affidavit, if we take those listed by the district court as being the ones relied on by the trial court, it appears that the defects were largely technical and subject to correction. A liberal treatment of the petitioners' motion should have led to an order giving them the opportunity to supply the deficiencies. After all, had the same objections been raised to Dr. Graubard's testimony at the trial, the plaintiffs could have rephrased the questions or otherwise remedied the alleged insufficiency. We think they should have the same opportunity in the summary judgment procedure.
For the reasons expressed the decision of the district court is quashed and the cause remanded for further proceedings consistent herewith.
It is so ordered.
THORNAL, C.J., and THOMAS, CALDWELL and ERVIN, JJ., concur.

ON PETITION FOR REHEARING
O'CONNELL, Justice.
To our opinion filed June 1, 1966 all of the respondent-defendants filed petitions for rehearing. Some of the complaints against our opinion deserve mention; others do not.
The respondents urge that we should have read all of the more than 1000 pages of the record before determining that respondents had failed to demonstrate the absence of genuine issues of material fact. The answer is simply that it was unnecessary to read all of the record to reach that conclusion. Furthermore, while we do not so hold, it seems to us that the mere fact that the record in a summary judgment proceeding exceeds 1000 pages militates against a finding that no genuine issues of fact exist to be tried.
One of the respondents complains that our opinion lays down a different rule for summary judgment proceedings in medical malpractice cases than that applicable in other negligence actions. This is directed to our statement that the summary judgment device should be applied with special caution in negligence actions and that "this is particularly true in malpractice suits. * * *" The criticized statement was not intended to prescribe a different rule governing summary judgment procedures in such cases. It simply recognizes that the factors dictating caution in the use of this device are particularly prevalent in this type of negligence action.
Another respondent charges that our opinion places on a defendant in such an action an "impossible burden of proving conclusively on a motion for summary judgment that he was not guilty of any negligence." We did not intend to hold this, nor do we find that our opinion says this. What it does say is that the movant has the burden of showing conclusively that genuine issues of material fact do not exist. Since the material issues in any cause are those which are relevant to the issues made by the pleadings, it follows that the movant's burden is limited to making the required showing only as to those issues. Therefore the movant may meet his burden by showing conclusively that he is not guilty of the negligence charged against him. Conceivably he may also meet this burden by showing conclusively that the negligence charged, or any committed by him, was not causally related to the plaintiff's injury. He might also do it by showing conclusively that the plaintiff is unable *48 to present requisite proof of the negligence charged in the pleadings, as was done in Food Fair Stores, Inc. v. Patty, Fla. 1959, 109 So.2d 5.
The requirement that the absence of triable issues be shown conclusively is not new. In effect we have so held in every case in which the point has been discussed. Recently, in Harvey Building, Inc. v. Haley, Fla. 1965, 175 So.2d 780, we held that "all doubts regarding the existence of an issue are resolved against the movant * *." Requiring that all doubts be removed is the same as requiring that the showing must be conclusive. This conclusive showing is justified because the summary judgment procedure is necessarily in derogation of the constitutionally protected right to trial.
The respondents complain that our observation, by way of obiter dictum, regarding the liberal treatment which ought to be accorded petitions for rehearing in summary judgment proceedings violates Rules 1.36 and 2.8, F.R.C.P. 30 and 31 F.S.A. We feel our statements are not violative of the rules, but rather are necessary to a just application of the summary judgment procedure. Furthermore, the statements we made are consistent with the liberal treatment we authorized in Roberts v. Braynon, Fla. 1956, 90 So.2d 623. In that case we held that when it appeared that the movant was entitled to summary judgment, but it appeared that the losing party may have a better case than the one presented, the motion should be granted with leave to amend given the losing party.
We have carefully considered all the other points raised by the petitions and find them not to be deserving of discussion.
With these supplemental remarks the petitions for rehearing are denied.
THORNAL, C.J., and THOMAS, CALDWELL and ERVIN, JJ., concur.