94

## NEAL v. FLORIDA INDUSTRIAL COMMISSION.
### No. 67-232.
Circuit Court, Leon County.
August 5 and September 17, 1968.

Donald Feldman of Feldman & Abramson, Miami, for the plaintiff.

Patrick A. Mears, General Counsel, Industrial Commission, Earl Faircloth, Attorney General, Robert A. Chastain, Assistant Attorney General, and Fred C. Davant of Wicker, Smith, Pyszka, Blomqvist & Davant, Miami, for the defendants.

GUYTE P. McCORD, Jr., Circuit Judge.

*Summary declaratory judgment and injunction, August 5, 1968:*
This cause came on for hearing on plaintiff's motion for summary judgment in her favor. Upon consideration of the motion and the pleadings and affidavits on file, the court finds that there is no genuine issue as to any material fact, and that the plaintiff is entitled to a judgment as a matter of law.

Plaintiff has pending before the Florida Industrial Commission for review an order of a deputy commissioner of that commission entered upon a claim of plaintiff filed under the workmen's compensation law. Plaintiff contends that the commission is illegally constituted under the statutes of Florida and seeks a declaration to that effect and an injunction against the commission as presently composed from entertaining plaintiff's review proceedings and to stay same until such time as that body is deemed by decree to be validly constituted and existing. In addition, plaintiff seeks other more drastic coercive relief against the commission designed to affirmatively require a reorganization of the membership to effect a legally constituted body.

The decision here as to whether or not the Florida Industrial Commission is legally constituted is determined by a construction of §440.44(2), Florida Statutes, the statute providing for appointment of the members of that commission by the governor. The pertinent portion of said statute follows —

> ". . . The commission shall consist of a chairman and two other members to be appointed by the governor. Not more than one appointee shall be a person who on account of his previous vocation, employment or affiliation shall be classified as a representative of employers, and not more than one such appointee shall be a person who on account of his previous vocation, employment, or affiliation shall be classified as a representative of employees . . ."

It is obvious from the foregoing statute that the legislature intended that there be not more than one of the three members of the commission with an employee background and not more than one with an employer background. The third member must necessarily have a background identifying him as neither an employer representative nor an employee representative.

The governor, as the appointing authority, is vested with the duty and discretion each time he fills a vacancy on the commission to determine that his appointee qualifies for appointment under the statute. He, of course, has reasonable latitude in the exercise

of this discretion — because the matter of determining from an appointee's background that he should or should not be classified as a representative of "employers" or "employees" requires an exercise of discretion from a consideration of such appointee's previous vocation, employment or affiliation. This, however, is not an unlimited discretion for if it were such, it could completely thwart and make meaningless the clear and apparent intention of the legislature to create, insofar as possible, a membership on the commission with an equal balance between employer and employee backgrounds — one member from each such background with a third whose background would indicate that he falls in neither class.

We are concerned here only with a consideration of the background of Commission Chairman Thomas W. Johnston, it being admitted by defendants that Commissioner Lightsey is classified as a representative of employees and Commissioner Nelson is classified as a representative of employers.

Chairman Johnston was appointed by Governor Claude Kirk on January 3, 1967, without classification as either employer or employee representative. He, of course, could not have legally been so classified and apparently was appointed as one who, because of his previous vocation, employment or affiliation, would not be classified as a representative of either employers or employees.

So, we turn to the crux of the issue here before the court. Did the governor's appointment of Chairman Johnston render the Industrial Commission an illegally constituted body? Plaintiff contends that it did; that Chairman Johnston's previous vocation, employment or affiliation renders him a representative of employers. Defendants' contention is otherwise.

From the defendants' answer it affirmatively appears that Mr. Johnston was employed continuously by insurance companies from 1946 until his appointment as chairman of the commission in 1967 as aforesaid. The first 12 years of this period he was employed by the Kemper Insurance Group and worked as a claims adjuster adjusting workmen's compensation, fire, and other casualty claims with 5 percent or less of his time devoted to investigating and adjusting workmen's compensation claims. From 1957 to 1959, he was employed by All State Insurance Company as a claims examiner and subsequently claims supervisor where his work consisted of the review of the adjustment of automobile accident and general liability claims. That company was not engaged in writing workmen's compensation insurance during said period. In 1959 Mr. Johnston was employed by General Guaranty Insurance Com-

pany as a branch claims manager in Miami, where he had 7 persons under his supervision and was charged with the responsibility of running the office and supervising personnel in the handling of claims. Approximately 5 percent of the work of the office involved workmen's compensation. The remaining dealt with fire insurance losses and casualty losses — automobile and general liability. After working for this company as branch claims manager for approximately 6 months, Mr. Johnston was transferred to the home office of the company as home office claims manager where he administered the claims operation of the entire company, approximately 5 percent of the claims administered being workmen's compensation claims. In 1961 he was promoted to vice-president in charge of claims with the responsibility for the administration of the entire claims program of the company and other corporate policy making duties as a vice-president. Upon assuming his duties as chairman of the commission on January 3, 1967, he severed all relationship with former employers, devoting his entire time to his duties as chairman and a member of the commission. The commission has a number of responsibilities in addition to the workmen's compensation field. Under the law, however, workmen's compensation is one of this commission's major divisions.

Does this insurance background of Mr. Johnston as shown in defendant's answer render him one who should be classified as an additional representative of employers (in addition to Mr. Nelson)? Under §440.41, Florida Statutes, an insurance carrier of an employer is responsible for the discharge of the employer's liabilities under the workmen's compensation law which is administered by defendant commission. Chairman Johnston has a lengthy background as an executive officer and claims manager and previous other employment with insurance carriers insuring employers under the workmen's compensation law. Such carriers are responsible as aforesaid under the law for discharging all liability for compensation to employees imposed by the law upon the employer the carrier insures. If a claim of an employee is controverted by the insurance carrier it defends the claim before the defendant commission. Mr. Johnston's many years' experience in the workmen's compensation field as an officer and representative of insurance companies providing insurance coverage to employers under the workmen's compensation law and handling claims filed by employees against such employers indicates clearly a person who — on account of his previous vocation, employment or affiliation — should be classified as a representative of employers. The insurance companies engaging in workmen's compensation coverage which he represented stood in the shoes of the employers they insured before the commission of which he is now the chairman.

His interest on behalf of his insurance companies was identical with that of an employer. It was his company's money which was being paid out on employees' claims. The court does not consider it material that 5 percent or less of Mr. Johnston's work with insurance companies was devoted to workmen's compensation cases. The fact remains that he worked for many years in the field of adjusting claims including workmen's compensation claims and from 1961 to 1967 was vice-president in charge of claims with responsibility for administering the entire claims program (including workmen's compensation) of an insurance company. In view of Mr. Johnston's previous vocation and employment, the court cannot see how he can be classified other than as a representative of employers. This, of course, is no reflection upon him — he is eligible to be the employer representative on the commission but there can be only one such representative. The fact that there are now two employer representatives renders the commission not legally constituted with power and jurisdiction to review plaintiff's case.

Defendants' answer includes a résumé of the backgrounds of previous chairmen of the commission and alleges that these previous chairmen have been the unclassified members of the commission representing the public. It is noted that several of these had previously operated insurance businesses. It does not affirmatively appear, however, that such persons were engaged in adjusting claims of insurance carriers writing workmen's compensation insurance. Further, the court does not consider that these allegations are material to the issue here before the court. Even if we were to conclude that the commission was illegally constituted during some prior period such would have no bearing on whether or not it is legally constituted at the present time.

In consideration thereof, it is ordered and adjudged as follows — (1) The Florida Industrial Commission is presently not legally constituted. (2) The Florida Industrial Commission as presently composed be and it is hereby enjoined from entertaining plaintiff's review proceedings and said proceedings are stayed until such time as said commission is legally constituted. (3) The court reserves jurisdiction to determine such further questions and to grant such further and necessary coercive and affirmative relief as may be necessary and appropriate should the Florida Industrial Commission continue to remain illegally constituted for an unreasonable period of time following the entry of this judgment.

*Order denying petition for rehearing, September 17, 1968:* This cause came on for hearing on defendants' petition for rehearing

and after considering same and the arguments of counsel for the respective parties, the court now enters its order in the premises.

Defendants have cited two opinions of the Supreme Court as authority for their contention that this court erred in granting plaintiff's motion for summary judgment — Holl v. Talcott, Fla., 191 So.2d 40, and Harvey Building, Inc. v. Haley, Fla., 175 So.2d 780. These opinions hold to the proposition that before it becomes necessary to determine the legal sufficiency of affidavits or other evidence submitted by the party moved against, it must first be determined that the movant has successfully met his burden of proving a negative, i.e., the non-existence of a genuine issue of material fact; that this must be proved conclusively and the proof must be such as to overcome all reasonable inferences which may be drawn in favor of the opposing party. When the moving party has met this burden the party moved against must come forward with facts contradicting those submitted by the movant and demonstrating a real issue between the parties. It should be mentioned that the two cited cases were both negligence actions and the Supreme Court stated in Holl v. Talcott that summary judgment procedures should be applied with special caution in negligence actions.

This, of course, is not a negligence action, but in applying the principles of law outlined above to this present suit for declaratory judgment, the court must look first to the complaint, the answer and plaintiff's affidavits for an initial determination of the question of whether or not a genuine issue of material fact is shown.

From such of the allegations of the complaint as are admitted by defendants' answer, plus the allegations of the answer, which give a full résumé of Thomas W. Johnston's vocational career since his graduation from high school, all of which is admitted for the purpose of the motion for summary judgment, plaintiff sustained the burden required by the foregoing decisions.

Defendants failed to show by affidavits or other evidence that there is a genuine issue of material fact in this controversy. In reaching its final decision, the court considered all of the factual allegations of defendants' answer as well as their affidavits. The only question remaining was one of law from application of the statute to the undisputed facts. The court resolved this legal question in its summary declaratory judgment and injunction pursuant to Rule of Civil Procedure No. 1.510.

In consideration thereof, it is ordered and adjudged that the motion for rehearing is denied.