RAWLS, Judge.
In this malpractice action plaintiffs, Fess Rentz, Jr. and Evelyn Rentz, as surviving parents of their deceased two-year-old daughter, and Fess Rentz, Jr., as Administrator of the Estate of said child, appeal from final summary judgment entered for defendant, Charles T. Ozaki.
The point of law presented is whether the defendant met the burden cast upon him of conclusively showing the nonexistence of any material issue of fact. It is our judgment that he failed to meet this burden, therefore, we reverse.
Several depositions and two affidavits were relied upon by defendant in moving for summary judgments. The depositions reflect that on Friday night, November 12, 1965, the Rentzes’ two-year-old daughter became very sick. Mrs. Rentz telephoned the defendant-doctor about midnight and advised him that the child was running a high fever and vomiting and asked if they *758 could bring the child to him for examination. He refused to see the child at that time but told Mrs. Rentz to bathe her in alcohol and water and see him in his office the next morning. During the night the fever started cooking the child; she had intermittent chills, and her skin began chapping. At 7:30 or 8:00 o’clock the next morning the parents arrived at the doctor’s office with the child. About thirty minutes later the defendant arrived at his office, examined the child and deposed that the “only significant thing that I found was that the child had slightly injected eardrums.” His diagnosis was “acute upper respiratory infection,” and without making any allergy tests he ordered two injections — one of Dramamine and the other of Duracillin. The parents and child left the doctor’s office but returned within forty-five minutes at which time the child was suffering convulsions. The doctor prescribed an injection of sodium luminal, an anticonvulsant. The parents deposed that the father suggested the child should be admitted to the hospital. The defendant deposed that he suggested the child be entered into the hospital. In any event, the doctor wrote out orders for the child’s admission to the hospital, directing an immediate injection of 500,000 units of aqueous penicillin and some laboratory tests. The child’s rectal temperature was 103.8 degrees at the time of admission to the hospital, and she was in a semi-comatose condition. A nurse’s aide noticed that the child was having trouble breathing and summoned a practical nurse. This practical nurse suctioned the child, noted that the child was in a convulsion, and called the doctor to tell him the child’s breathing was rapid and that she was not doing well. Mr. Rentz went to the doctor’s office to ask him to come to the hospital but was informed that he would do so when he finished with his office'patients. A little after 12:00 o’clock Noon the child expired. The doctor arrived at the hospital at about 12:40 P.M., some four hours after he first saw her, and pronounced the child dead.
The doctor deposed that he did not diagnose a penicillin reaction because he was not informed that the child was having respiratory distress. He listed the cause of death as “acute diffuse upper respiratory infection,” and stated that he thought the child may have had cerebral involvement but she did not have a stiff neck at the time of his examination, this being an indication of nervous system involvement. He further deposed that had he stayed with the child, he could not have prevented death.
Defendant filed the affidavits of two doctors stating that Dr. Ozaki used the ordinary skill and diligence and methods of examination and diagnosis “usually approved and practiced by medical men of ordinary learning, judgment and skill in this locality.” The plaintiffs filed the affidavit of a New York physician in opposition to defendant’s motion for summary judgment which affidavit stated that the symptoms indicated an acute emergency; that Dr. Ozaki’s diagnosis compared with the findings made by him on his examination “are contrary to the known facts in medicine”; and that when it became apparent that the child was not responding to the treatment, immediate changes were called for.
It is our conclusion that the posture of this cause and the efficacy of the affidavits fall squarely within the four corners of Holl v. Talcott, 191 So.2d 40 (Fla.1966), wherein the Supreme Court, in reviewing expert testimony extremely analogous to the instant cause, set aside a summary judgment entered by the trial court. Without unduly belaboring the question posed, we hold that the trial court erroneously granted summary judgments in the instant cause, and reverse upon the authority of Holl v. Talcott, supra, with directions to reinstate the plaintiffs’ complaints.
Reversed.
JOHNSON, C. J., and CARROLL, DONALD K., J., concur.