CHARLES CARROLL (Ret.), Associate Judge.
In 1972 the individual appellees, referred to as the Suero group, and the appellant Ricardo Nunez and certain other persons, referred to as the Nunez group, entered into a partnership agreement for the construction and consequent sale of a condominium. In this subsequent litigation involving the two groups, a partial summary judgment was entered in favor of the plaintiffs (Suero group) from which two of the defendants appealed.
By the pleadings and exhibits, and the evidence on motion for summary judgment, it was disclosed that initially the contribution of the Suero group was the land in *1318 volved, which they purchased from a member of the Nunez group for the purpose, at a price of $92,500, and transferred to the partnership, designated at the L.E.S.N. Apartments, Ltd.; and that the contribution of the Nunez group was their undertaking to arrange for the financing of the construction, pay for the architectural services, obtain the building permits and handle the construction. It was provided in the contract that in event the Nunez group should fail to perform as agreed the property supplied to the partnership by the Suero group would be reconveyed to that group.[1]
The Nunez group formed a corporation, NBS Development, Inc., which became the general contractor, and which corporation was designated and stated in the documents to be the owner of fifty percent interest in the project. The Suero group was so designated to own the other fifty percent thereof, in varying amounts among the members of the Suero group. It was provided that after completion and sale the proceeds were to be applied first to pay the construction loan, next to reimburse the Suero group for the cost of the land which they had supplied, and then to be ■ shared according to such designated ownership interests.
The institutional lender to which an application was made for a construction loan to be made to L.E.S.N. Apartments, Ltd. insisted that the individual members of the said partnership also sign as makers. When that circumstance arose, a further written agreement was made by the parties, modifying the prior agreements, by which the parties assented to that requirement of the lender. Also that modification agreement in some respects changed the order for payment of profits to the members, after payment of the loan and reimbursement of the Suero group for the land.
Accordingly, in October of 1972, a loan in the face amount of $420,000.00 was made to The L.E.S.N. Apartments, Ltd. by Washington Federal Savings and Loan Association, evidenced by a promissory note which the said partnership entity and individuals of the two groups signed as co-makers, and which was secured by a mortgage on the property. In the separate Construction Loan Agreement executed in connection therewith, it was stated that the net proceeds of the loan passing to the borrower were $409,861.00 and that “The total cost of construction of the afore-described improvements shall be in the amount of $445,-131.00”.
Construction was undertaken, and when it was nearing completion (90% completed according to Nunez) the construction loan money was exhausted. Completion of the project would have required an additional expenditure, the amount of which was in dispute but which the Nunez group responsible for the construction estimated to be approximately $30,000.00. For reasons which are in dispute, the parties did not obtain that additional financing, as a result of which construction was not completed, and the investment was lost when the lender acquired the property by foreclosure of the mortgage.
The Suero group filed this action against the Nunez group and against The L.E.S.N. Apartments, Ltd. and NBS Development, Inc. The complaint as amended was in four counts. Two counts were grounded on a contention by plaintiffs that the loss was occasioned by failure of the Nunez group to properly perform its obligation with reference to construction of the improvement. The first count alleged such improper performance and sought damages on the ground of breach of contract, and the fourth count alleged the loss resulted from negligence of the Nunez group in the performance of construction. The second count charged the Nunez group with fraud in the transaction. The third count alleged the defendants had accepted payment for one of the apartments in advance, and had *1319 not returned the same until such purchaser had threatened to file suit for recovery thereof.
The defendants answered, denying the allegations of improper performance. Appended to the answer was a counterclaim, and the answer incorporated the allegations of the counterclaim as affirmative defenses. The latter included an averment that the loss was brought about by failure and refusal of the plaintiff group to cooperate with defendants to secure the additional financing necessary for completion of the improvement, without which such added funds were not obtainable. Motion of plaintiffs to strike the affirmative defenses and to dismiss the counterclaim was denied, and plaintiffs filed responses thereto.
Plaintiffs moved for summary judgment. Discovery depositions of certain of the parties were taken. The defendant Ricardo Nunez filed an affidavit in opposition to the motion, which contained statements of certain facts in contradiction of plaintiff’s contention of nonperformance or improper performance by defendants, and stated certain facts in support of the affirmative defense above mentioned.
The trial court granted a summary judgment on the first count of the amended complaint, holding the plaintiffs were entitled to recover damages from NBS Development, Inc. and Ricardo Nunez, in an amount fixed by the court at $79,500.00 and holding the counterdefendants were entitled to judgment on the counterclaim. NBS Development, Inc. and Ricardo Nunez appealed.
On consideration of the record, briefs and argument, we hold entry of the summary judgment was error. The evidence did not demonstrate absence of genuine issues of material facts as to the affirmative defenses, the sufficiency of which had been challenged and upheld on motion to dismiss and strike. Emile v. First National Bank of Miami, 126 So.2d 305 (Fla.Sd DCA1961). On the pleaded contentions of the parties plaintiff and defendant, relating to the count and contentions on which summary judgment was entered, the evidence presented genuine issues of material facts which could not be resolved on motion for summary judgment, including issues as to whether the loss was caused by failure of the contractor corporation to properly perform in the handling of the construction, or was caused by improper conduct of the plaintiffs by refusal to furnish the cooperation necessary to obtain financing needed for completion of the improvement, or whether the loss by foreclosure was due to economic or other circumstances for which the parties were not responsible. Holl v. Talcott, 191 So.2d 40 (Fla.1966); Visingardi v. Tirone, 193 So.2d 601 (Fla.1966); Megdell v. Wieder, 327 So.2d 781 (Fla.3d DCA1976); Furlong v. First National Bank of Hialeah, 329 So.2d 406 (Fla.3d DCA1976).
Upon disposing of the appeal on that basis, we refrain from expressing opinion on whether the contract provision for recon-veyance of the property to the Suero group in event of failure of performance by the Nunez group was a provision for payment by means of or out of a particular fund, and if so, whether that would preclude the granting of damages or relief on a different basis than that thus contracted for, notwithstanding the loss of the property by foreclosure.
The summary judgment appealed from is reversed, and the cause is remanded for further proceedings.

. “9. It will be the obligation of the Nunez group to fulfill all of the steps necessary for the construction and termination of said Condominium building until the obtention of C. O. in collaboration with the Suero group.
“10. In the event that the Nunez group fails to fulfill its above obligation, the partnership will convey the property to the Suero group, thereby restoring title to it.”