ALTENBERND, Judge,
Dissenting.
It may be humane to shoot this horse today, but I would let it hobble a few more furlongs down the track. The summary final judgment entered in this case is at least premature.
James W. Lich alleges that in August 1996 he was working for his employer, who leased office space from N.C.J. Investment Company, when he reached over to close a sliding interior window. Without warning, the window broke, and he sustained severe injuries. Apparently, he was cut by the broken glass. In June 1997, Mr. Lich sued N.C.J., as the owner of the premises, and Radiant Properties & Management, Inc., as the management company. His second amended complaint alleges that N.C.J. and Radiant were negligent because one or both entities failed to correct a known defect and because they selected improper glass for the window. Admittedly, this pleading could be more specific in its allegations, but the sufficiency of the pleading is not at issue.
N.C.J. and Radiant moved for summary judgment in August 1997. Their motions were supported by only three affidavits. The affidavits establish that Mr. Lich’s employer leased this space from N.C.J. The employer was responsible for reporting maintenance problems to Radiant. N.C.J. did not participate in day-to-day management of its building. One of Mr. Lich’s co-employees noticed that the window was sticking about a week before this accident, but the employer did not notify Radiant. Prior to that time, the window had functioned without problem. Radiant also filed unexecuted answers to interrogatories identifying ten witnesses and claiming that Mr. Lich knew the window was stuck and forced it, causing the accident.
The record does not disclose the normal function of this window, but it appears likely the window is the type of sliding window that commonly separates a receptionist from a waiting area. This record contains no deposition, photograph, lease, or blueprints. Neither the trial court nor this court knows who installed the window, when it was installed, or who ordered the installation.[1] We know nothing about the specifications of the glass in the window. At best, we have hearsay evidence concerning events at the time of the accident and the nature of Mr. Lich’s injuries.
*1194 Mr. Lich filed nothing in opposition to the motion for summary judgment. The trial court granted the motion and entered the final summary judgment that is now on appeal.
Although a partial summary judgment may have been proper, I cannot rule out the possibility that one or both defendants are responsible for selecting a dangerous variety of window pane when safety glass, tempered glass, or a thicker pane may have been required either by the building code or common sense. Such a defect could have been latent.
If Florida followed the federal guidelines for summary judgment described in Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), perhaps this summary judgment would be correct. The Florida Supreme Court, however, has chosen to place a much higher burden on the party moving for summary jucjgment, stating: “[T]he party moving for summary judgment must show conclusively that no material issues remain for trial.” Visingardi v. Tirone, 193 So.2d 601, 604 (Fla.1966). Judge Scheb, writing for this district, emphasized that “even the slightest doubt that an issue might exist” renders summary judgment improper. Snyder v. Cheezem Dev. Corp., 373 So.2d 719, 720 (Fla. 2d DCA 1979). Although it may seem natural to expect that a party confronted by a motion for summary judgment would submit some evidence in opposition, the law is very clear that the opposing party has no obligation to take any action until the movant has met the heavy burden of proving a negative conclusively.[2] See Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966).
Mr. Lich’s counsel trusted the rhetoric of Holl and Snyder. Trust in the law is good. However, in an era when there is increasing pressure upon the judiciary to control frivolous lawsuits, real and imagined, our legal rhetoric and our legal process do not always align. In the current climate, plaintiffs’ counsel would do well to file Celotex style affidavits and other evidence in opposition to motions for summary judgment.

. The only information I can find in this record suggesting the window had existed in the building unaltered since prior to N.C J.’s purchase of the building are unexecuted answers to interrogatories. The interrogatories themselves are not in the record.
N.C.J. filed unexecuted answers to interrogatories, responding as follows to questions numbered 18, 19, and 21:
18. Unknown. They were in the building when N.C.J. bought the building.
19. [Objection to form] ... Without waiving any objection, we do not believe the interi- or window was installed by our employees.
[[Image here]]
21. Unknown. We believe the windows were in the building when Radiant took management of the building.
Radiant filed unexecuted answers to interrogatories, of the same number as those replied to by N.C.J., responding as follows to undisclosed questions numbered 18, 19 and 21:
18, Unknown.
19. [Objection to form] ... Without waiving any objection, we do not believe the interi- or window was installed by our employees.
[[Image here]]
21. Unknown. We believe the windows were in the building when Radiant took management of the building.

. At the hearing on the motion for summary judgment, Radiant and N.C.J. argued vigorously that depositions had been taken and that it was Lich’s obligation to file any deposition that might conflict with the few facts established in their affidavits.