SHARP, W., J.
England (the defendant below) appeals from a final summary judgment granted against him which awarded Seminole Walls & Ceilings Corporation (Seminole Walls) the sum of $848,948.27, plus interest. We reverse because we think the record established material issues of fact which should not have been resolved on the basis of a summary judgment. Davis v. Lyall & Lyall Veterinarians, 506 So.2d 1072 (Fla. 5th DCA 1987); Green Valley School, Inc. v. Cowles Florida Broadcasting, Inc., 327 So.2d 810 (Fla. 1st DCA 1976).
Seminole Walls filed a three-count complaint for fraud, conversion and civil theft against England, in which it alleged that England, as comptroller of Seminole Walls from 1997 through 2000, embezzled funds from the company for his personal use. England filed an answer and affirmative defenses, in which he claimed all the activities performed by him as comptroller during his employment with the company were done under the supervision and control of Robert Fox, the president, and Robert Fox Sr., the de facto chief operating officer, and with their knowledge and consent. England also claimed the complaint had been filed against him in retaliation, and to discredit him as a material witness in a criminal case filed against the Foxes in Orange County Circuit Court, in which the state asserted charges of criminal racketeering, fraud and conspiracy. See State v. Fox, Case No. CR 99-193CFA & B. Seminole Walls denied these allegations.
Seminole Walls filed a motion for summary judgment on August 6, 2001. It argued in its motion that England had asserted his Fifth Amendment privilege in answering interrogatories and at his deposition, and that he would be unable to set forth any facts to dispute Seminole Walls’ claims. At this deposition, which is in the *263 record, England’s attorney stated the Fifth Amendment privilege was being asserted because Seminole Walls had initiated a criminal inquiry against England arising out of the same facts and circumstances set forth in its complaint.
Seminole Walls also filed an affidavit by Fox Sr., in support of the summary judgment motion. In his affidavit, Fox Sr. alleged, in essence, the material allegations of England’s embezzlement and forgery as set forth in the complaint and attested he was “the person with knowledge” of the statements contained therein.
England then filed an affidavit in opposition to the summary judgment motion, restating the essence of his defenses: that Fox Sr. had been in complete control of the company operations, that he knew about all of the questioned transactions and had orchestrated them as a general scheme to defraud various government entities of taxes due them. In summary, he alleged Fox Sr. paid employees in ways that did not show as salary so as not to trigger tax obligations by the company but which would result in income tax deductions for the corporation. He further alleged that these activities culminated in a criminal prosecution of Fox Sr., and that he has since entered a plea of no contest to the felony charges of racketeering, conspiracy to commit racketeering, etc. The record further reveals that Fox, in fact, filed a petition to enter a plea of no contest to racketeering, conspiracy to commit racketeering, four counts of workers compensation fraud and organized fraud, on November 15, 2000.
At the. summary judgment hearing, Seminole Walls persuaded the trial judge to exclude England’s affidavit because it was untimely. Although it is not clear under the applicable Florida Rules of Civil Procedure, we think the better view is that it was timely and should have been considered at the summary judgment hearing held October 29, 2001.
The record established that England’s counsel faxed the affidavit to Seminole Wall’s counsel on October 24, 2001, and counsel acknowledged receiving it. On the same day, counsel for England mailed the original affidavit to the court and a copy to Seminole Wall’s counsel. Because the original affidavit was not in the court file at the time of the summary judgment hearing, both attorneys went to the Clerk’s Office to try to locate it. The Clerk was unable to verify at that time it had been received because it can take a day or two from actual receipt of an affidavit until the computer input and placement in the file occurs. Later, counsel for England confirmed it had been received by mail in the Clerk’s Office on October 29, 2001.
Florida Rule of Civil Procedure 1.510(c), entitled “Summary Judgment,” provides:
The adverse party may serve opposing affidavits by mailing the affidavits at least 5 days prior to the day of the hearing, or by delivering the affidavits to the movant’s attorney no later than 5:00 p.m., two business days prior to the hearing.
Seminole Walls argues that since the affidavit was not mailed five days prior to the summary judgment hearing, nor was it hand-delivered two days before the hearing, it was untimely.
England relies on rule 1.080(b). That rule sets forth five methods by which “delivery” can be accomplished. The fifth method listed is:
Delivery of a copy within this rule shall be complete upon:
[[Image here]]
(5) transmitting it by facsimile to the attorney’s or party’s office with a cover sheet containing the sender’s name, *264 firm, address, telephone number, and facsimile number, and the number of pages transmitted. When service is made by facsimile, a copy shall also be served by any other method permitted by this rule. Facsimile service occurs when transmission is complete....
England argues that pursuant to this rule, the affidavit was delivered to Seminole Walls on October 24, the day it was sent, and thus was timely.
Were we to accept Seminole Wall’s argument, we would be foreclosing the possibility of using facsimile to accomplish service of a pleading or affidavit in the context of summary judgment proceedings, although rule 1.080(b) permits facsimile service and delivery in all other contexts. We think the better view is that rule 1.510(c) does not set forth the exclusive methods of service or delivery for summary judgment proceedings and that it falls under the umbrella of rule 1.010, which provides that these rules (ie., including rule 1.080(b)) “apply to all actions of a civil nature and all speciality statutory proceedings in the circuit court and count courts except those to which the Florida Probate Rules, the Florida Family Law Rules of Procedure, or the Small Claims Rules apply.” Summary judgment proceedings are not excepted out.
We also think that this interpretation of the rules furthers the general policy of rule 1.010 which states that the rules be interpreted “to secure the just, speedy, and inexpensive determination of every action.” Faxes are a comparatively recent innovation in communication, but they have become a common and well-accepted way people do business and communicate today. They are clearly a speedier and less expensive way of communication, than, for example, hand-delivery. In our view, reference to “delivery” in rule 1.510(c) includes and incorporates delivery by fax in rule 1.080(c). Thus England’s affidavit was timely under the Summary Judgment Rule since its delivery was accomplished more than two days before the summary judgment hearing.
We conclude that England’s affidavit should have been considered at the summary judgment hearing and as such it clearly creates issues of material fact which should not have been resolved on a summary judgment basis. England also argues here that, in any event, Fox Sr.’s affidavit should not have been considered by the trial court because it did not state explicitly that Fox Sr. had personal knowledge and thus it was insufficient to provide a basis for summary judgment in Seminole Wall’s favor. We disagree. Although inartfully drafted, Fox Sr. stated he had knowledge about the transactions, facts and circumstances discussed in the “Affidavit,” and the allegations concerned the business operations over which he was the primary officer and supervisor.
Finally, Seminole Walls argues England’s affidavit should be disregarded because a party cannot file an affidavit in opposition to a motion for summary judgment in an attempt to create a disputed issue of material fact, while at the same time seeking cover under the Fifth Amendment, citing Jones v. Stoutenburgh, 91 So.2d 299 (Fla.1975). In Jones, a party filed a counteraffidavit in a summary judgment proceeding and during a subsequent deposition, asserted his Fifth Amendment privilege. In this case, England asserted his Fifth Amendment privilege one year before the summary judgment because Seminole Walls had filed a criminal complaint against him. Under these circumstances, England’s invocation of his Fifth Amendment privilege a year prior to the summary judgment proceeding should not affect its outcome.
*265 All that Seminole Walls can offer here is the testimony of its controlling officer Fox Sr. as to the nature of the transactions engaged in by England, and all that England can offer is his own testimony as to whether Fox knew about them and directed them. It is clearly a matter of disputed facts and credibility of witnesses, best left for a trial resolution. Holl v. Talcott, 191 So.2d 40 (Fla.1966); Manning v. Clark, 71 So.2d 508 (Fla.1954).
REVERSED and REMANDED.
THOMPSON, C.J., and ORFINGER, J., concur.