RAMIREZ, J.
(dissenting).
Respectfully, I do not see any genuine issue of material fact that precluded the trial court’s entry of summary judgment in favor of Dr. Sing. I do not see that BLT ever showed that the pre-approval obtained through Hameroff was a viable offer to provide financing.
The contract between Dr. Sing and BLT was contingent on Dr. Sing obtaining 50% financing for a $625,000 loan at prevailing rates. Dr. Sing was required to apply for financing within five days of the effective date of the contract and furnish BLT with either a loan commitment, approval letter, or, alternatively, written notice that he was unable to obtain the commitment within the earlier of thirty days or five days prior to closing. The contract allowed either party to cancel the contract “[i]f, after using diligence and good faith, Buyer is unable to obtain a Commitment within the Commitment Period.” The Commitment period was to end July 8.
Because condominium hotel units present unique financing challenges, BLT provided Dr. Sing contact information for Marc Hameroff, loan officer for Mortgage Network Solutions, and Jason Schoen, branch manager for IndyMac, both of whom had experience in obtaining lending for condominium hotel buyers. Following *234 execution of the contract, Dr. Sing met with Hameroff, Schoen, and Audrey Rosenbaum, a mortgage broker with Southeast Capital Group.
It was undisputed that Hameroffs affidavit states that Dr. Sing was pre-ap-proved for financing at a rate of 8.5% and that Dr. Sing was displeased with the high interest rate. Subsequently, Dr. Sing, with the help of Rosenbaum, applied for loans with at least five other lenders in an effort to obtain a rate of about 5%. He was unable to obtain financing from any of the five other lenders. According to Rosen-baum, the lenders refused to originate a loan where a condominium hotel unit was not being purchased directly from the developer. It appears from the record that the transaction was further complicated because there was no documentation regarding the assignment arrangement between WCI and BLT at the time Dr. Sing applied for the financing. BLT was not the developer of the condominium hotel property, but had received the unit at issue through contract.
It is undisputed the documentation issue, which was not corrected until after Dr. Sing’s cancellation, interfered with Dr. Sing’s diligent efforts to obtain financing. On June 26, Rosenbaum sent Dr. Sing a Statement of Credit Denial, Termination, or Change stating “[n]o loan programs available for contract as submitted.” That same day, Dr. Sing sent a letter notifying BLT he was canceling the contract due to his inability to acquire financing. Dr. Sing also requested that his deposit be released within five days.
Following Dr. Sing’s cancellation, a dispute arose regarding release of the deposit, which resulted in attempts to correct the documentation issue. BLT asserted that Dr. Sing forfeited the deposit because he failed to exercise due diligence and good faith in acquiring the necessary financing. Specifically, BLT focused on the June 11 pre-approval letter from Hamer-off. Apparently realizing that the assignment arrangement had posed a significant obstacle in Dr. Sing’s efforts to obtain financing, BLT contacted WCI and requested they draft a formal assignment. According to the affidavit of WCI employee Kristen Fazio, WCIs management team formally consented to the assignment sometime in July, 2008. Thereafter, the assignment form was sent to Dr. Sing, who received it twenty days after he had canceled the contract.
Because the parties were unable to reach an agreement regarding the deposit, Coldwell Banker instituted the current in-terpleader action against Dr. Sing and BLT. Dr. Sing answered and asserted that, having exercised good faith in attempting to acquire financing, he was entitled to the deposited funds. Dr. Sing also filed a cross-claim joining Turner and claiming breach of contract against BLT and Turner on the basis that they failed to provide Dr. Sing access to the condominium as was required under the contract. In response, Turner reasserted that Dr. Sing failed to act in good faith, and denied Dr. Sing’s claim that he was foreclosed from accessing the property in accordance with the contract.
In support of his motion for summary judgment, Dr. Sing provided an affidavit from Rosenbaum, as well as the affidavit of Darrell Burks, the real estate broker for Coldwell Banker who was Dr. Sing’s agent on the Unit 1610 contract. Both affidavits support Dr. Sing’s assertion that he exercised good faith and due diligence in attempting to acquire the financing. It is undisputed that Rosenbaum contacted at least five lenders on Dr. Sing’s behalf and was unable to secure a letter of commitment or pre-approval.
*235 Dr. Sing also relied on Marc Hameroff s deposition regarding the June 11 pre-ap-proval offer for 8.5%. Hameroff initially provided an affidavit in support of BLT in which he stated, “[b]ased on the information [Dr. Sing] provided, he was perfectly qualified for financing of a hotel/condominium development unit and I was certain I could obtain financing for him.” However, in his deposition, Hameroff testified that he was unaware that Dr. Sing’s contract was not directly with the developer, and very few lenders would consider financing a contract that was not entered into directly with the developer. If he had known that was happening, he would have had a new contract drawn up, particularly when the contract between BLT and the developer had a clause stating that it could not be assigned. The pre-approval he gave Dr. Sing was not a firm commitment.
BLT did not have the necessary written approval for the assignment at the time Hameroff pre-approved Dr. Sing. This is reflected both in the contract itself, and in Fazio’s affidavit wherein she states, “WCI consented to the assignment in July, 2008.” The record shows BLT attempted to remedy the assignment problem after Dr. Sing had canceled the contract. The assignment was not obtained until July 28, long after the financing period had run.
In the summary judgment hearing below, Dr. Sing averred cancellation was proper because the pre-approval Hameroff provided was contingent on a restructuring of the contract, to which Dr. Sing was neither obligated nor inclined to agree. Accordingly, Dr. Sing argued that he fulfilled his good faith obligation in filing at least six applications with the additional lenders. Notwithstanding, BLT argued Dr. Sing exercised bad faith in canceling the contract prior to revisiting Hameroff s offer. It was BLTs position that had Dr. Sing returned to Hameroff prior to canceling the contract, the problem with the assignment would have been discovered and possibly rectified before closing. Thus, BLT argued that with the possibility of proper assignment looming, good faith would require Dr. Sing consult Hameroff again before canceling the contract.
The issue of whether a purchaser exercises due diligence to secure the requisite financing is ordinarily a question of fact. See Quirch v. Coro, 842 So.2d 184, 186 (Fla. 3d DCA 2003); Fieldstone v. Chung, 416 So.2d 11, 12 (Fla. 3d DCA 1982). Here, however, Dr. Sing conclusively established that in the exercise of due diligence and good faith, he would not have received financing for the unit pursuant to the existing contract. See Meyers v. Cunningham, 415 So.2d 802, 802 (Fla. 3d DCA 1982) (holding the purchaser was entitled to return of his deposit where he was rejected for financing after submitting all documents and information available to him). I do not believe this record shows Dr. Sing was required to take steps to overcome lenders’ reservations about financing his purchase, and accept a bad deal, when the lenders’ reservations arose because of the seller’s failure to properly document its interest in the property. Neither good faith nor due diligence requires that a purchaser restructure the transaction. See Merritt v. Davis, 265 So.2d 69, 70 (Fla. 3d DCA 1972) (affirming summary judgment for the purchaser, who was unable to secure financing as originally contemplated in the sale agreement, and rejecting the seller’s contention that the purchaser was required to accept a modified financing proposal the seller obtained).
The written approval for assignment and related forms WCI eventually sent BLT required Dr. Sing’s signature. However, I agree with the trial court’s reasoning that, as a matter of law, due diligence would not require that Dr. Sing agree to the new *236 terms. Thus, because Dr. Sing satisfied his burden by showing that no genuine issue of material fact existed here, we should affirm the trial court’s order granting Dr. Sing’s motion for summary judgment. See Holl v. Talcott 191 So.2d 40, 43 (Fla.1966). See also Quirch, 842 So.2d at 186.