681 So.2d 898 (1996)
Mary McCLOUD, Appellant,
v.
Barbara E. SWANSON and Mark Robert Swanson, Appellees.
No. 95-2116.
District Court of Appeal of Florida, Fourth District.
October 23, 1996.
David S. Nicnick, Cooper City, and Michael Milchman, Fort Lauderdale, for appellant.
Richard A. Sherman and Rosemary B. Wilder of the Law Offices of Richard A. Sherman, P.A., and Patricia S. Sechan of Barnett, Hill, Barnard and Neale, P.A., Fort Lauderdale, for appellees.
STEVENSON, Judge.
The issue in this case is whether the appellant/plaintiff overcame the presumption of *899 negligence that attaches to a rear driver in a rear-end collision. The trial court granted a directed verdict in favor of the appellees/defendants. Because we find that the record, when viewed in the light most favorable to the plaintiff, as it must be, does not support the entry of a directed verdict, we reverse. In this case the plaintiff was entitled to have the question of the defendants' negligence submitted to the jury.
According to her own testimony, the plaintiff below, Mary Ann McCloud, rear-ended a pick-up truck owned by defendant Barbara Swanson and driven by Robert Swanson. The plaintiff testified that on the morning of the accident, she was stopped at a traffic light at the corner of McNab and Cypress Creek Roads. Hers was the first car at the light. Portions of plaintiff's testimony on direct examination follow:
A: As I proceeded to go across the road on Cypress Creek Road there was no one in front of me. As I was going down the road in a bit of a second there was a vehicle who just pulled from my right side and started to stop. I tried to stop but I was too close to him to stop. As I proceeded
Q: When you say he pulled from the right, where did he pull to?
A: He pulled directly in front of me.
Q: In your lane of
A: In my lane in front of me.
Q: How many lanes of traffic were there?
A: There were only two lanes. There was a fourth lane but there were two going south and two going north.
Q: You were in the left lane?
A: I was in the left lane going south. He started to stop in front of me which it appeared from nowhere. I tried to avoid him and I swerved. I either had to go to the left, face on, a head-on collision, or either go to the right to avoid the accident. So I tried my best to stop the car and turn to my right which I hit him on the right side and my left fender on my car.
Q: Did you apply your brakes?
A: Yes, I did.
Q: Did you apply them as hard as you could?
A: Yes.
Q: Was there a skidmark that you left?
A: Exactly, yes.
Q: When he pulled in front of you how many feet was it between the front of your car and the back of his truck?
A: Less than 50 yards. Less than that. It was very close.
Q: Tell me car distances.
A: It wasn't even a car length in front of me. He pulled in front of me, started to stop, and I couldn't swerve. It was like I was even
Q: When you say less than a car length
A: I have a small car.
Q: So just a matter of feet?
A: Yes, maybe three feet, maybe two feet. Very close.
Q: You were watching ahead of you at the time?
A: Exactly.
Q: Your eyes were on the road?
A: Exactly.
Q: You weren't playing the radio?
A: No.
Q: You weren't playing with the air conditioner or looking down?
A: No, I was looking directly in front of me.
Q: When you impacted with his truck, had he already been stopped or was he stopped?
A: He was stopped.
Q: He had not been stopped yet?
A: He was not stopped completely on the road. He was stopping before as my car hit his truck. He was like still stopping and I was trying to avoid him.
Q: Did you at any time show a left signal or anything like that?
A: No, I didn't see a left signal on his truck.
. . . . .
Q: Now, how many feet from the stop light was this, or how many yards from the stop light was this that the impact happened?

*900 A: About one car length.
Q: No, from the stop light?
A: From the stop light, as I proceeded across McNab Road it was like one or two car lengths before the accident occurred.
Q: So what speed were you able to accelerate to?
A: I was only going like ten or fifteen miles an hour. I just pulled out from the light so I wasn't going that fast.
Q: Now, had you seen this vehicle at any time prior to him pulling in from the right from front of you?
A: No.
Q: He wasn't behind you or you hadn't seen him?
A: No. There was no one beside me, and the only cars that were going northbound on the opposite side of the road were the only cars on the road.
. . . . .
Q: Did you see his brake lights on?
A: No. They got onAs soon as he got in front of me he started putting his foot on the brake. The vehicle was not stopped when the cars collided. He was still like stopping.
Q: But his speed was less than yours?
A: Exactly.
There is a presumption in Florida law that the driver of the rear vehicle is the negligent party in a rear-end collision. Gulle v. Boggs, 174 So.2d 26 (Fla.1965). However, this presumption is rebuttable, with the burden on the rear driver to present evidence that the lead driver was in some way at fault in causing the accident. Id. at 28. When the driver of the rear vehicle produces evidence of the lead driver's negligence, the presumption dissipates and becomes no more than "a permissible inference" of the rear driver's negligence. Id. at 29. The matter of the rear driver's negligence is then for the trier of fact to decide by reconciling the conflicts, drawing any reasonable inferences from the facts adduced and evaluating the credibility of the witnesses. Id.
The cases have held that where there is at least some evidence of negligence on the part of the lead car driver, the issue of fault should be resolved by the jury. E.g., Edward M. Chadbourne, Inc. v. Van Dyke, 590 So.2d 1023 (Fla. 1st DCA 1991). More specifically, where there is positive evidence that the lead driver has made a sudden stop or has suddenly switched lanes at a time and place where it could not reasonably be expected, a fact issue is created as to the degree of that driver's fault in causing the accident. See Tozier v. Jarvis, 469 So.2d 884, 886 (Fla. 4th DCA 1985).
The plaintiff in the instant case presented positive testimony, albeit slight, of a sudden change of lanes and unexpected stop. The plaintiff testified that even though she was paying full attention to the road before her, she did not see the defendant's vehicle until he pulled in front of her and that he seemed to "appear out of nowhere." The defendant then stopped in front of her, and the plaintiff slammed on her brakes, but was unable to prevent the collision.
On a motion for directed verdict, the plaintiff is entitled to all reasonable inferences from the facts which would support her claim. See Pollock v. Goldberg, 651 So.2d 721 (Fla. 4th DCA 1995). A reasonable inference from the plaintiff's testimony is that the defendant overtook the plaintiff's vehicle, quickly pulled into the lane in front of her, and then came to a sudden stop. In determining the facts, the fact-finder "may draw reasonable inferences from the evidence." Fla. Std. Jury Instr. (Civ.) 2.1. Consequently, reasonable factual deductions drawn from the testimony become positive evidence of those facts within the meaning of Tozier v. Jarvis.
We acknowledge that there were some seeming inconsistencies in the plaintiff's testimony,[1] but the import of those inconsistencies *901 was for the jury to consider. The believability of the plaintiff's explanation of the accident and the question of defendant's negligence were matters for the trier of fact, and the trial court erred in taking this decision away from the jury.
REVERSED AND REMANDED FOR A NEW TRIAL.
GUNTHER, C.J., and BAKER, MOSES, Jr., Associate Judges, concur.
NOTES
[1] On cross-examination, the plaintiff testified as follows:

Q. The truck, you never saw it at all until it got in front of you?
A. Exactly. Apparently, he came from the west and tried to swerve in front of me to make that turn into the 7-11.
Q. But, Mrs. McCloud, it's true you never saw where this truck came from?
A. He had to come from my right. There was no other vehicles so he was on my right.
Q.... [D]id you ever see him in the right-hand lane?
A. No, I did not because there was no vehicles beside me.