914 So.2d 502 (2005)
Barbara PETRUSKA, Appellant,
v.
SMARTPARKS-SILVER SPRINGS, INC., etc., Appellee.
No. 5D04-2825.
District Court of Appeal of Florida, Fifth District.
November 18, 2005.
Timothy S. Babiarz and Robert E. Seymour of Savage Krim Law Firm, Ocala, for Appellant.
Eric G. Belsky and Jeffrey W. Johnson of Johnson, Leiter & Belsky, Fort Lauderdale, for Appellee.
SAWAYA, J.
Barbara Petruska appeals a summary final judgment entered in favor of Smartparks-Silver Springs, Inc. d/b/a Silver Springs in the personal injury action she filed seeking damages for injuries she sustained when she fell while on the premises operated by Smartparks. We reverse.
Petruska fell and was injured while attending the Festival of Lights at the Silver Springs attraction located near Ocala, Florida. The cause of her fall, she claimed, was a baby stroller that was pushed into her from behind as she walked in a crowd towards the exit. Petruska alleged that Smartparks is responsible for her injuries because it failed to provide adequate lighting throughout the park, failed to maintain adequate crowd control during the festival, and failed to warn of the defective conditions on the premises.
The only evidence presented by either side at the summary judgment proceeding was the deposition of Petruska, who testified in some detail about the inadequate lighting and improper crowd control that prevented her and other patrons from seeing the walkways and safely exiting the park. Specifically, Petruska alleged that as she was attempting to exit the finale of the festival, she entered onto a walkway that was not adequately lit. She testified that a large crowd was allowed to gather at the same spot and allowed to leave at the same time. As she was walking on the poorly lit walkway with this large group of people who were attempting to exit the *503 display, Petruska was struck from behind by a woman in the crowd pushing a baby stroller. This caused Petruska to fall and sustain the injuries for which she seeks compensation. Petruska described how the incident occurred in her deposition:
A. I was on that walkway with this group of people  you know, everyone is flowing out there to go.
Q. And then what happens?
A. That's where I got knocked down.
Q. How did you get knocked down, do you know?
A. By a baby stroller.
Q. Somebody pushing a baby stroller hit the back of your legs?
A. We were all very close. It was a big group of people leaving and I'm sure she  between that and the lighting, she didn't  I'm sure she didn't see me. Who in their right mind would knock somebody down?
Q. You don't think she did it on purpose?
A. No, certainly. But I'm sure that because of the conditions and the people leaving the park.
Q. So are you saying somebody from our distance across, arms length apart, couldn't see each other?
A. That's right. I couldn't see my husband's face and I'm looking for my friend Rita, and I'm calling her and I'm with my husband and all of a sudden I'm down.
. . . .
Q. I've got you.
A. And when I went down, I was so surprised at whatever was hitting my legs, I kind of turned to my right to try and see what happened. And of course, out of the corner of my eye I saw the baby stroller which [is] what was knocking me down, but by then I was already on my way. It was so fast.
Q. Okay. Do you remember if the baby carriage hit like  did it catch your foot, did it knock you at your knees?
A. No, no.
Q. How did it 
A. It was closer to my feet. It was like there must have been something sticking out on the front of that carriage but the way it caught my  what would you call it lower leg, feet area, down below. It caught me right there.
Q. Right foot or left foot first?
A. Grabbed me by both feet actually, both legs because I had no way to balance myself.
Q. And how did you fall?
A. More to my left because when she hit me it was that surprise I kind of, what was that, at the same time I was falling I was kind of turned a little bit so most if it was the fall to the left side and knee and that was flat down on my left.
Smartparks filed a motion for summary judgment relying solely upon the deposition testimony of Petruska. The trial judge granted the motion and this appeal ensued.
The great benefit derived from summary judgment is that it puts an end to useless and costly litigation where there is no genuine issue of material fact to present to a jury. But no matter how enticing, it must never be utilized to unjustly deprive a litigant of a jury trial to resolve material issues of fact that exist in a case. Therefore, the courts have placed rather strict conditions on its availability and restrictions on its use. The standard the courts have adopted to determine the propriety of summary judgments is an amalgam of venerable rules consistently applied *504 for many years. Together, these rules form a benchmark by which application of this procedural method of pretrial disposition in any given case may be judged. We are bound to fairly and accurately apply these rules. Hence, we must determine the propriety of a summary judgment according to the following:
 The pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c); see also Fisel v. Wynns, 667 So.2d 761, 764 (Fla.1996); Kitchen v. Ebonite Recreation Ctrs., Inc., 856 So.2d 1083 (Fla. 5th DCA 2003); Krol v. City of Orlando, 778 So.2d 490 (Fla. 5th DCA 2001).
 The party moving for summary judgment must meet its burden of showing conclusively the absence of any genuine issue of material fact. Kitchen; Krol; Hoch v. Rissman, Weisberg, Barrett, 742 So.2d 451 (Fla. 5th DCA 1999), review denied, 760 So.2d 948 (Fla.2000).
 The evidence and any supporting affidavits must be examined in the light most favorable to the non-moving party and if the slightest doubt exists, summary judgment is inappropriate. Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000); Lawrence v. Pep Boys-Manny Moe & Jack, Inc., 842 So.2d 303, 305 (Fla. 5th DCA 2003) ("[W]e must view the evidence contained in the record, including any properly asserted supporting affidavits, in the light most favorable to the non-moving party, and if the slightest doubt exists, the summary judgment must be reversed.") (citation omitted); Krol; Besco USA Int'l Corp. v. Home Savs. of Am. FSB, 675 So.2d 687, 688 (Fla. 5th DCA 1996).
 Every possible inference must be drawn in favor of the non-moving party. Kitchen; Bratt ex rel. Bratt v. Laskas, 845 So.2d 964, 966 (Fla. 4th DCA 2003) ("All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available.") (citation omitted); Bruckner v. City of Dania Beach, 823 So.2d 167, 170 (Fla. 4th DCA 2002), review denied, 842 So.2d 843 (Fla.2003); Hoch; Besco.

 "If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Moore v. Morris, 475 So.2d 666, 668 (Fla.1985) (citations omitted); Kitchen; Hoch; Juno Indus., Inc. v. Heery Int'l, 646 So.2d 818, 821 (Fla. 5th DCA 1994) (quoting Moore).
 It is improper to "consider either the weight of the conflicting evidence or the credibility of witnesses in determining whether a genuine issue of material fact exists in a summary judgment proceeding." Juno Industries, 646 So.2d at 822 (citations omitted).
Fair application of these principles assures the fullest utility of this procedural device while preventing it from ever becoming a contrivance by clever litigants intent on extricating themselves from the burdens associated with a trial that the opposing party rightly deserves. See Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla.2003) ("A summary judgment deprives a party of his or her right *505 to trial and must be exercised with restraint; any doubts must be resolved in favor of the nonmoving party.") (footnote omitted). Application of this standard has led the courts to conclude that summary judgment should be cautiously granted in negligence cases. Moore; Holl v. Talcott, 191 So.2d 40 (Fla.1966). The issue here is one of causation. In cases where there are issues relating to the cause of the accident, the courts are even more cautious in granting summary judgment because causation is so fact-specific. See Sawyer v. Allied Int'l Holdings, Inc., 707 So.2d 761, 763 (Fla. 2d DCA 1998) ("Proximate cause questions generally must be resolved by the trier of fact based on all the facts and circumstances presented.") (citing Helman v. Seaboard Coast Line R.R. Co., 349 So.2d 1187, 1189 (Fla.1977); Leib v. City of Tampa, 326 So.2d 52, 53 (Fla. 2d DCA 1976)); Pamperin v. Interlake Cos., Inc., 634 So.2d 1137, 1139 (Fla. 1st DCA 1994) ("The circumstances under which a court may resolve the question of proximate cause as a matter of law are extremely limited.") (citation omitted); Goode v. Walt Disney World Co., 425 So.2d 1151, 1154 (Fla. 5th DCA 1982) ("Similarly, a question of proximate cause must generally be resolved by the trier of fact from all the facts and circumstances in a particular case, and where questions of negligence or contributory negligence are close, any doubt should always be resolved in favor of a jury trial.") (citations omitted), pet. for review denied, 436 So.2d 101 (Fla.1983).
We have reviewed the only testimony presented, which is the deposition of Petruska. She testified that although she did not see the woman behind her and did not know for certain what caused the woman to strike her from behind, the incident occurred because the poor lighting and improper crowd control made it difficult for the woman to see in front of her. Petruska gave detailed testimony regarding the poor lighting conditions, the difficulty she and others had in seeing, and how large crowds were allowed to congregate and then attempt to leave the park all at once causing people to bump into each other. We believe that this presents a possible and reasonable inference that we must consider in favor of Petruska as the non-moving party. Moreover, if we had the slightest doubt whether this evidence created a material issue of fact regarding the cause of the accident, we must resolve that doubt in favor of Petruska.
Smartparks argues that the summary judgment should be affirmed because Petruska must stack inference upon inference to prove her case. The prohibition against stacking of inferences has been applied by the courts when determining the propriety of summary judgment dispositions. Koelling v. CSX Transp., Inc., 673 So.2d 67, 67-68 (Fla. 5th DCA) ("We affirm the judgment for FPL because there is no evidence, absent the stacking of conjectural inferences, that it was guilty of any causative negligence.") (citation omitted), review denied, 680 So.2d 423 (Fla.1996); Byrd v. Leach, 226 So.2d 866 (Fla. 4th DCA 1969). We do not believe, however, that inferences must be stacked in this case. Smartparks concedes in its brief that it "agrees with the factual assertions of how the incident occurred" and that "[i]t is undisputed that the Plaintiff was struck from behind in the back of her legs by a woman pushing a baby stroller." With that fact conceded by Smartparks, if there is an inference here, it relates to the reason the woman struck Petruska with the stroller. As we have indicated, the testimony in this record presents a possible and reasonable inference that poor lighting and improper crowd control may have caused the woman to strike Petruska from behind. The fact that Smartparks suggests *506 other possible causes of the accident is not a sufficient reason to affirm the final summary judgment; if different reasonable inferences may be drawn, the jury should resolve the issue. See Moore; Kitchen; Hoch; Juno Industries; Goode, 425 So.2d at 1156 ("It was not necessary for the plaintiff below to exclude the existence of other reasonable inferences of non-negligent causation in order to avert entry of a summary judgment.").
Smartparks argues that Petruska did not present any eyewitness testimony to the accident and no expert opinions regarding the inadequate lighting and improper crowd control. Smartparks further contends that the only evidence was presented by Petruska and that this is insufficient to overcome the motion for summary judgment. We note that Smartparks did not present any witnesses or affidavits and that it was apparently content to rely solely on Petruska's testimony. We are not to weigh the evidence, judge the credibility of the witnesses presented, or give the benefit of the doubt to the party seeking summary judgment. We must consider the evidence presented in the light most favorable to Petruska. Moreover, we must determine whether a material issue of fact is presented; tallying the number of witnesses presented is not a relevant consideration here. Otherwise, the summary judgment procedure may devolve into a wager of affidavits and depositions. See Lake v. Konstantinu, 189 So.2d 171, 175 (Fla. 2d DCA 1966) ("Not even the ancient device of compurgation went that far for it at least required the aid of oath helpers who could join their oaths to that of the defendant. Rule 1.36 of the Florida Rules of Civil Practice was not meant to provide compurgation in an even easier form nor does it do so."), disapproved on other grounds, Felix v. Hoffmann  LaRoche, Inc., 540 So.2d 102 (Fla.1989).
The other arguments raised by Smartparks relate to the alleged negligence of Petruska. The jury should determine if Petruska was comparatively negligent and, if so, to what degree. Based on the record before us and the testimony presented, that is not an issue to be resolved by summary judgment.
We conclude that Smartparks has failed to meet its burden of establishing that there are no issues of material fact to be resolved by a jury. Accordingly, we reverse the summary judgment and remand this case for further proceedings.
REVERSED and REMANDED.
SHARP, W., J., concurs.
GRIFFIN, J., dissents, with opinion.
GRIFFIN, J., dissenting.
Ms. Petruska testified that "something knocked her down" as she was walking out of the park with a big group of people, trying to maintain the same speed as the crowd. She looked to her right after she fell and saw a baby stroller and a woman whom she cannot identify.
Q: [T]he bottom line is if you didn't even know she was behind you, there is no way you can know why she ran into you on [sic] this time, correct?

A: I guess not. I can't imagine.
(Emphasis added.)
Even assuming the lighting was "poor" and the crowd control was "inadequate," there is zero evidence that either of these conditions had anything whatsoever to do with causing this accident. This is not an "inference" case, it is a "speculation" case. This evidence could never sustain a verdict, and it cannot (or should not) defeat a *507 judgment for the defendant, summary or otherwise.