936 So.2d 646 (2006)
Joe ALFORD, Appellant,
v.
COOL CARGO CARRIERS, INC., Ta Saphan, et al., Appellees.
No. 5D05-1646.
District Court of Appeal of Florida, Fifth District.
June 30, 2006.
Rehearing Denied August 28, 2006.
*647 Beth M. Gordon, of Parrillo, Weiss & O'Halloran, Boca Raton, for Appellant.
E.T. Fernandez, III and Tiffani C. Audilett, of Inman & Fernandez, P.A., Jacksonville, for Appellees.
SAWAYA, J.
When two motor vehicles collide in Florida and one is struck in the rear, a presumption arises that the individual driving the rear vehicle was negligent. The question here is whether that presumption applies in instances where the lead vehicle  *648 the one struck in the rearcrosses over into the lane of the other vehicle just before the collision occurs. Joe Alford, a passenger in the lead vehicle who was injured in the rear-end collision allegedly caused by the driver of the rear vehicle, Ta Saphan, contends that the presumption applies and that the summary judgment rendered in favor of Saphan and Cool Cargo Carriers, Inc. must be reversed.[1] We disagree that the presumption applies under the particular facts of this case but, nevertheless, agree that the summary judgment should be reversed.
The events that led to the rear-end collision between the two vehiclesboth semi-tractor trailersbegan when the driver of the lead vehicle, Kevin Shadday, pulled over to the shoulder of southbound I-75 just north of the left exit leading onto the Florida Turnpike. Shadday discussed with his passenger, Alford, whether it would be faster to take the Turnpike than to continue their journey on I-75. When the decision was made to take the Turnpike, Shadday activated his left turn signal and re-entered I-75, which is three lanes wide. Shadday proceeded across the right and middle lanes of I-75 to reach the left lane. Saphan, who also intended to take the Turnpike exit, had been driving in the far right lane of southbound I-75, but a mile or two from the actual Turnpike exit had moved his vehicle into the middle lane in anticipation of the left-hand exit for the Turnpike. Both the left lane and the middle lane of I-75 are exit lanes for the Turnpike. Traffic was moderate; there was traffic ahead in all three lanes. Saphan allowed his vehicle to slow from the posted 70 mph speed limit down to 60-65 mph because he knew from his many prior trips along that route that he needed to go slower to negotiate the exit safely.
The first that Saphan saw Shadday was when Shadday's vehicle was between the right lane and the middle lane. Saphan was in the middle lane. He steered to the left to avoid Shadday's vehicle, explaining, "He came so fast and get in front of me I was trying to move away from him" and "he came in too fast in front of me and I get awaytry to get away from him that why I end up in the far left lane."
Saphan was successful in avoiding Shadday in the middle lane, but unfortunately, as Saphan steered into the left lane to avoid Shadday's vehicle, Shadday also continued moving to the left lane. Saphan struck Shadday in the rear. As a result, Alford was injured. Shadday has no memory of the accident other than leaving the shoulder of I-75. In his deposition, Saphan was asked whether he had seen Shadday's vehicle "at all before the two tractor trailers came together" and he responded, "No, I didn't see it." He had not noticed any vehicles on the right shoulder of the road in the two miles prior to impact either. When asked why he had not seen Shadday until Shadday suddenly came over in his lane, Saphan replied:
I was in the lane I need to get on the Florida Turnpike. My concern was to go with the speed which is safe for me to get on the curve to the Florida Turnpike. That's why I cannot tellthat's why I cannot tell you that I wassaw him earlier or anything like that.
According to Saphan, the two vehicles were in the far left lane when the right front grill of Saphan's vehicle hit the bottom left portion of Shadday's trailer. According to Alford, however, the impact occurred *649 in the middle lane. Saphan was traveling less than 60 mph at the moment of impact, as he had slammed on his brakes to avoid a collision. Shadday was traveling only 35 mph at impact. Shadday was aware that his vehicle was about to be hit, as he yelled out a warning to Alford.
Alford filed suit against Saphan and Cool Cargo, alleging that Saphan's negligent operation of his vehicle had caused the collision and the resulting damages to Alford.[2] Saphan and Cool Cargo filed a motion for summary judgment, alleging that Shadday's lane change and low speed were the sole and proximate cause of the accident. Alford responded that his vehicle was struck in the rear and, therefore, a presumption of negligence on the part of Saphan prevented summary judgment in Saphan's favor. Alford also argued that the presumption could not be rebutted by Saphan and Cool Cargo because Saphan admitted that he had not seen Shadday's vehicle until it started to enter the middle lane. Specifically, Alford argued:
The Defendant may have an explanation for why he rear-ended a tractor with a trailer attached on a clear night with unlimited view of the roadway and the surrounding areas. A jury could decide that the driver of the vehicle the Plaintiff was riding in bears some responsibility for the accident, but there is no way that this case is one that can be resolved by summary judgment.... Because of the nature of the accident, Defendant will have the burden of going forward with evidence to contradict or rebut the presumption of negligence that exists.
Unpersuaded by Alford's argument, the trial court rendered summary final judgment in favor of Saphan and Cool Cargo, finding that the "evidence establishes the sole cause of the traffic crash was Shadday's improper lane change" and that the "evidence negates the application of the `rear-end collision rule'" as expressed in Florida's caselaw. Alford appeals.
The rear-end collision rule was recognized by the Florida district courts quite some time ago, see McNulty v. Cusack, 104 So.2d 785 (Fla. 2d DCA 1958), and was adopted by the Florida Supreme Court in Bellere v. Madsen, 114 So.2d 619 (Fla.1959). See Gulle v. Boggs, 174 So.2d 26 (Fla.1965). The purpose of the rule is founded on the perceived need to somewhat lessen the burden borne by a plaintiff to prove two of the requisite elements of negligencebreach of the duty of care and causationwhich are inherently difficult to establish in most rear-end collision cases because the driver of the lead vehicle, whose attention is usually focused on events in the front rather than the rear of the vehicle, generally knows that he or she was struck from behind but does not know why. See Clampitt v. D.J. Spencer Sales, 786 So.2d 570 (Fla.2001); Eppler v. Tarmac Am., Inc., 752 So.2d 592 (Fla.2000); Jefferies v. Amery Leasing, Inc., 698 So.2d 368 (Fla. 5th DCA 1997). Hence, the driver of the rear vehicle that collides with the back of the lead vehicle is presumed negligent unless the rear driver presents evidence that fairly and reasonably tends to show that the presumption is misplaced. Clampitt; Eppler; Gulle; Wright v. Ring Power Corp., 834 So.2d 329 (Fla. 5th DCA), review denied, 846 So.2d 1148 (Fla. 2003); Jefferies.
There are three general categories of affirmative explanations that may effectively rebut the presumption of negligence: 1) an abrupt and arbitrary stop in a *650 place where it could not reasonably be expected or an unexpected change of lanes, see Clampitt; Eppler; Conda v. Plain, 222 So.2d 417 (Fla.1969); Wright; Antokal v. Llana, 763 So.2d 1067 (Fla. 4th DCA 1999), review denied, 767 So.2d 458 (Fla. 2000); McCloud v. Swanson, 681 So.2d 898 (Fla. 4th DCA 1996); Liriano v. Gonzalez, 605 So.2d 575 (Fla. 3d DCA 1992); Tozier v. Jarvis, 469 So.2d 884 (Fla. 4th DCA 1985); 2) a mechanical failure, i.e., sudden brake failure, that causes the rear driver to collide with the lead driver, see Murray v. Schreiner, 825 So.2d 527 (Fla. 2d DCA 2002); Antokal; Liriano; Tozier; and 3) the lead vehicle is illegally and, therefore, unexpectedly stopped. Antokal; Liriano; Tozier. In these instances, the purpose for the presumption is not served because the driver of the lead vehicle was a contributing cause of the collision or the driver of the rear vehicle was rendered incapable due to mechanical failure to prevent the collision and, therefore, is not negligent.
If the rear driver presents sufficient evidence to rebut the presumption, the case is submitted to the jury, without the aid of the presumption, "to reconcile the conflicts and evaluate the credibility of the witnesses and the weight of the evidence." Gulle, 174 So.2d at 29; see also Clampitt, 786 So.2d at 573 ("`When the defendant produces evidence which fairly and reasonably tends to show that the real fact is not as presumed, the impact of `the presumption is dissipated.' Whether the ultimate fact has been established must then be decided by the jury from all of the evidence before it without the aid of the presumption.'") (emphasis omitted) (quoting Gulle, 174 So.2d at 29); Servello & Sons, Inc. v. Sims, 922 So.2d 234, 236 (Fla. 5th DCA 2005) ("Once the presumption is rebutted, the case goes to the jury as an ordinary negligence case.") (citing Klipper v. Gov't Employees Ins. Co., 622 So.2d 1141, 1143 (Fla. 2d DCA 1993)); Duhaime v. Boggs, 877 So.2d 860 (Fla. 5th DCA 2004); Jefferies, 698 So.2d at 371 ("If it is sufficiently demonstrated that the lead driver was negligent as well, the jury should pass upon the question of shared liability and apportionment of damages."); Yellow Cab Co. of St. Petersburg, Inc. v. Betsey, 696 So.2d 769, 771 (Fla. 2d DCA 1996) ("If the defendant produces evidence that fairly and reasonably shows that he was not negligent, the effect of the presumption disappears and negligence then becomes a jury question.") (citing Baughman v. Vann, 390 So.2d 750 (Fla. 5th DCA 1980)). Once the presumption is rebutted, the presumption is "reduced to the status of a permissible inference or deduction which the jury may or may not draw from the evidence before it." Gulle, 174 So.2d at 29; see also Conda.
Here, sufficient record evidence fairly and reasonably tends to show a sudden and unexpected lane change on the part of Shadday. This evidence sufficiently rebuts the presumption of negligence on the part of Saphan and requires that the case be submitted to the jury to determine the issue of negligence. Even if there is conflicting evidence in the record whether the lane change was sudden and unexpected, summary judgment is improper and the case should be submitted to the jury. See Murray. Moreover, there is sufficient evidence indicating that both Saphan and Shadday may have been negligent. Shadday may have improperly changed lanes, rendering him negligent. See § 316.089(1), Fla. Stat. (2001) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."). As for Saphan, the evidence reveals that he did not see the vehicle driven by Shadday as it attempted to change lanes, despite the fact that it had its turn signal activated and despite the large size of the vehicle and *651 the lack of evidence that Saphan's view of the vehicle was obstructed. See Clampitt, 786 So.2d at 575 ("Each driver is charged under the law with remaining alert and following the vehicle in front of him or her at a safe distance."); Hernandez v. Feliciano, 890 So.2d 401, 403-04 (Fla. 5th DCA 2004) ("It is undisputed that the front right of Feliciano's car impacted with the rear left bumper of Hernandez's car and that Hernandez's car was pushed all the way into the driveway by the impact. This evidence could have indicated to the jury that Feliciano could have avoided the accident had she been paying proper attention.") (footnote omitted); see also Hunter v. Ward, 812 So.2d 601, 604 (Fla. 1st DCA 2002) (quoting Clampitt). Apportionment of the negligence of each party is a matter for the jury, which makes summary judgment inappropriate.
We conclude that the presumption of negligence has been rebutted and the case should be submitted to the jury without the presumption to determine whether one or both parties were negligent and, if so, to what extent. We also conclude that there are genuine issues of material fact and that taking the evidence in the light most favorable to Alfordthe nonmoving partymuch more than a slight doubt exists that summary judgment is inappropriate. See Petruska v. Smartparks-Silver Springs, Inc., 914 So.2d 502 (Fla. 5th DCA 2005).
Accordingly, we reverse the summary judgment rendered in favor of Saphan and Cool Cargo and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PLEUS, C.J., and ORFINGER, J., concur.
NOTES
[1] The record is unclear as to the exact legal relationship between Saphan and Cool Cargo. The amended complaint alleged that Saphan "was driving a motor vehicle that was owned by him for the use and benefit of... Cool Cargo Carriers, Inc." Saphan and Cool Cargo admitted this allegation.
[2] According to Alford's brief, suit was also filed against Shadday and the owner of the vehicle he was driving, United Van Lines, but summary judgment in their favor was entered by the trial court based on worker's compensation immunity.