974 So.2d 532 (2008)
LAND MANAGEMENT OF FLORIDA, INC., a Florida corporation, and Cross Country Land Trust, Inc., a Florida corporation, Appellants,
v.
HILTON PINE ISLAND LTD., a Florida Limited Partnership, Barakot Ltd., Geoffrey Bell, Individually, John H.C. Lee, as Ancillary Trustee In Bankruptcy of Ian Geoffrey Bell and Barakot Ltd., and Robert Lindahl, as Trustee of the FBL Land Trust, Appellees.
Land Management of Florida, Inc, a Florida corporation, Appellant,
v.
Hilton Pine Island Ltd., a Florida Limited Partnership, Barakot Ltd., Geoffrey Bell, Individually, John H.C. Lee, as Ancillary Trustee in Bankruptcy of Ian Geoffrey Bell and Barakot Ltd., Robert Lindahl, as Trustee of the FBL Land Trust, and Cross Country Land Trust, Inc., a Florida corporation, Appellees.
Nos. 2D05-131, 2D05-1882, 2D06-3620.
District Court of Appeal of Florida, Second District.
February 8, 2008.
*533 W. Gus Belcher, II of Nuckolls, Johnson, Belcher & Ferrante, P.A., Fort Myers, and Stanley Jay Bartel of Law Offices of Stanley Jay Bartel, The Villages, for Appellants.
J. Matthew Belcastro of Henderson, Franklin, Starnes & Holt, Fort Myers, for Appellee John H.C. Lee.
No appearance for remaining Appellees.
SILBERMAN, Judge.
In case number 2D05-131, Appellants Land Management of Florida, Inc., and Cross Country Land, Trust, Inc. (jointly referred to as the buyers), challenge an amended partial summary judgment that disposes of their specific performance action as to Appellee John H.C. Lee, as Ancillary Trustee in Bankruptcy of Ian Geoffrey Bell and Barakot Ltd. The buyers raise several issues, but dispositive of this case is that Lee, as movant, failed to prove the nonexistence of any genuine issue of material fact and that he was entitled to judgment as a matter of law. Therefore, we reverse and remand for further proceedings.
In case number 2D05-1882, the buyers challenge an amended partial and final summary judgment that disposes of their Specific performance action as to Appellees Hilton Pine Island, Ltd. (HPI), and Robert Lindahl, as trustee of the FBL Land Trust. Again, we reverse and remand for further proceedings because HPI and Lindahl, as movants, failed to prove the nonexistence of any genuine issue of material fact and that they were entitled to judgment as a matter of law.
In case number 2D06-3620, Land Management appeals the denial of motions to vacate the summary judgments that the trial court had granted. Based on our reversal of the summary judgments in case *534 numbers 2D05-131 and 2D05-1882, we dismiss the appeal in case number 2D06-3620 as moot.

Facts
In May 2003, the buyers filed their complaint for specific performance and other relief against HPI, Barakot Ltd., Geoffrey Bell, and Lindahl. The operative pleading here is the sworn Amended Complaint (Corrected), filed on July 15, 2004 (the Complaint), in which the buyers added Lee as a defendant. The dispute arose from three real estate contracts that Cross Country entered into in May 2002 for the purchase of three adjacent parcels of real property on Pine Island in Lee County. Cross Country entered into a contract to purchase "Parcel A" from HPI, "Parcel B" from Lindahl, and "Parcel C" from Barakot Ltd. and Bell. Cross Country assigned the three contracts to Land Management on September 11, 2002.[1]
Attached to the sworn Complaint are the three contracts, each of which contained a simultaneous closing clause that provided as follows:
The parties hereto acknowledge and agree that this offer to purchase is subject to a simultaneous acceptance of all other contracts included to purchase the entire project known as The Villages of Pine Island, and will also be subject to a simultaneous closing thereof.
Those parcels include: Hilton-Pine Island, Ltd.; Barakot Ltd. + Geoffrey I. Bell; and FBL Land Trust c/o Robert Lindahl, Trustee.
The effective date of the three separate contract(s) shall be modified to include that last date of which all of the individual sellers have executed and accepted this offer to purchase. It is the Buyer's intention to purchase all properties located within the Villages of Pine Island, or none of them. In the event that any of the seller's hereto do not accept these offer(s) to purchase prior to the expiration of the time for acceptance period of May 31st, 2002 these offers to purchase shall become null and void.
With respect to the provision for a simultaneous closing, the buyers alleged in the Complaint as follows:
8. Each of the sellers thus, understood and readily agreed that the purchaser was only interested in purchasing all three (3) parcels simultaneously and that if any one of the three (3) parcels was not ready for closing, the other two (2) parcels would have to remain in abeyance pending the readiness of the not-yet-ready parcel for closing.
9. The conduct and the actions of the sellers, and their counsel, from and after execution of the initial Contracts (Exhibits "A", "C" and "E"), clearly indicated that all three sellers understood and agreed that all three (3) parcels would have to be ready for closing, at a simultaneous closing, before the purchaser could be placed in default as to any one contract.
The buyers also alleged that, outstanding Development Order 7-03-83 was of vital importance for the Village of Pine Island project. They asserted that a clause in the contracts "made it a condition for closing that the sellers provide proof to the purchaser" that the Development Order "was not only in full force and effect but that it had been buttressed by active construction within the requisite code periodin this case eighteen (18) monthsso that following closing the purchaser would have time to commence construction on the *535 project under an open and viable Development Order." The contracts required the sellers to convey marketable title, subject to matters of record, including the Development Order, "provided there exists at closing no violation of the foregoing and none of them prevents Buyer's intended use" as described in the contracts.
The buyers further alleged that counsel for the sellers of Parcels A and B met after execution of the contracts and delegated to Attorney Barker the duty to apply for proof that the Development Order was "outstanding and viable and that construction had been commenced on the project, in a manner sufficient to satisfy the County authorities, so that immediately upon purchase the purchaser would have a viable project able to be developed under a usable Development Order."
The documents attached to the Complaint included an addendum to the Lindahl contract for Parcel B, which extended closing to January 15, 2003. The addendum also stated that "[t]he due diligence period shall be extended until ten (10) days after Buyer is furnished a letter from Lee County, Florida that the Subject D.O. is still in effect[.]" A letter from Lee County dated March 20, 2003, stated that the Development Order would be in effect so, long as there were "no periods of construction inactivity which exceed[ed] 18 months." An addendum to the HPI contract for Parcel A extended the closing date to "on or before 60 days from the issuance of the vegetation-clearing and removal permit from. Lee County[.]" Lee County issued a vegetation permit on May 20, 2003.
The buyers also alleged in the Complaint that since the filing of the original complaint in May 2003, Barakot Ltd. and Bell had filed ancillary bankruptcy proceedings in the Middle District of Florida. The buyers asserted that once any of the sellers of the three parcels became aware that Barakot Ltd. and Bell were in bankruptcy proceedings, it was necessary to institute an ancillary bankruptcy proceeding for the bankrupt seller "to obtain authority from the bankruptcy court to honor Plaintiff's contracts with Barakot and Bell." The buyers alleged that the sellers neglected to inform the buyers of the bankruptcy and to amend the title commitment. Moreover, they alleged that Attorney Barker cooperated in obtaining approval in the bankruptcy court not of the buyers' contract but of a competing contract to purchase Parcel C.

Summary Judgment
Review of a summary judgment is by the de novo standard. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter' of law." Id. It is well established "`that the burden to prove the non-existence of genuine triable issues is on the moving party, and the burden of proving the existence of such issues is not shifted to the opposing party until the movant has successfully met his burden.'" Nard, Inc. v. DeVito Contracting & Supply, Inc., 769 So.2d 1138, 1140 (Fla. 2d DCA 2000) (quoting Holl v. Talcott, 191 So.2d 40, 43-44 (Fla.1966)). This court has recognized "that the merest possibility of the existence of a genuine issue of material fact precludes the entry of final summary judgment." Id.

Case Number 05-131
Lee moved for summary judgment and filed his affidavit and supporting documents. It is undisputed that at the time Bell and Barakot Ltd. executed the contract for Parcel C; Lee was the bankruptcy trustee for Bell. The High Court of Justice of the United Kingdom appointed Lee as Bell's bankruptcy trustee on January 21, *536 1997. Lee contended that Bell's bankruptcy estate included a jointly held interest in Parcel C and that it was part of the bankruptcy estate when Bell executed the contract in May 2002. In the affidavit Lee alleged, "On and after January 21, 1997, all documents necessary to sell or transfer the assets in Bell's bankruptcy estate would have to be executed by me." Lee did not sign the real estate contract for Parcel C or its addendum, and Lee further alleged that he did not authorize anyone else to sign on his behalf. Lee contended that because he did not sign or authorize the contract, it was, not a valid contract to sell Parcel C, thus precluding specific performance of the contract.
Based on documents that Lee relied upon, the buyers disputed his assertions. The buyers contended that the documents established that Barakot Ltd. was the only owner of Parcel C at the time of execution of the contract and that it was therefore unnecessary for Lee to execute the contract as Bell's bankruptcy trustee. Our review of those documents reflects that a genuine issue of material fact remains in dispute.
Lee contended that an October 1997 judgment in a quiet title action shows that Bell had a jointly held interest with Barakot Ltd. in Parcel C and that Bell's jointly held interest was part of the bankruptcy estate. The pertinent portion of the October 1997 judgment stated as follows:
The title of Plaintiffs, BARAKOT, LTD. and I. GEOFFREY BELL, to the following described real property in Lee County, Florida, see attached Exhibit A, is a good title against the claims or purported claims of the Defendants, ALLENDALE, LTD., GEORGE DAVIDSON, and CUMBRIA DEVELOPMENT CORPORATION, their grantees, successors, assigns and creditors, and all other parties claiming by, through, under, or against them; all parties having or claiming to have any right to common title or interest in that property; and of all persons claiming by, through, or under ALLENDALE, LTD., GEORGE DAVIDSON, and CUMBRIA DEVELOPMENT CORPORATION, since the filing of the Notice of Lis Pendens; and those claims or purported claims are cancelled; and title to the property is forever quieted in favor of BARAKOT, LTD.

(Emphasis added.) Although the judgment determined that the title of Barakot Ltd. and Bell was a good title against the described claims, the judgment went on to quiet title in favor of only Barakot Ltd.
Lee also relied on a consent to lien recorded in 1998 to support his position. The consent to lien stated, however, that Barakot Ltd. was "the owner and holder of" the property at issue. The consent to lien also stated that Barakot Ltd. and Bell granted Lee, as bankruptcy trustee, a lien against the property in the amount of $360,000.
Lee has failed to meet his burden as the movant on summary judgment to demonstrate the nonexistence of genuine issues of material fact. Based on the October 1997 judgment and the 1998 consent to lien, a genuine issue of material fact appears to exist as to whether Barakot Ltd. owned Parcel C or whether Barakot Ltd. and Bell owned Parcel C when the sales contract was executed for that parcel. If only Barakot Ltd. owned Parcel C, then Lee's signature as Bell's bankruptcy trustee would have been unnecessary on the 2002 contract and the contract would not have been invalid as an unexecuted contract.[2]
*537 Therefore, we reverse the amended partial summary judgment in favor of Lee and remand for further proceedings.

Case Number 05-1882
Lindahl filed a motion for summary judgment, in which HPI joined. Lindahl filed a supporting affidavit, asserting that the buyers did not close on the property by the extended closing date of January 15, 2003. He stated that the buyers asked for another extension but that he refused it and demanded closing. Lindahl asserted that the FBL Land Trust met all the requirements for closing.
Lindahl also asserted in his affidavit that "[o]ne of the owners of one of the other two parcels is in bankruptcy and neither I, nor the Plaintiffs can acquire that property since it is within the jurisdiction of the Bankruptcy Court."
The trial court granted summary judgment in favor of Lindahl and HPI based, first, on the grant of summary judgment in favor of Lee. The court determined that the contract for Parcel C was not subject to specific performance because at the time of contracting, Parcel C was under the control or ownership of Lee, as bankruptcy trustee, and no valid contract existed between the buyers and Lee. Because we have reversed Lee's summary judgment, that summary judgment is no longer a basis for summary judgment in favor of Lindahl and HPI.
The trial court further found that the facts in Lindahl's affidavit were uncontroverted and that there were no genuine issues of material fact. The court referred to the buyers' allegation that they "are ready, willing and able to purchase the subject properties and are willing to close once Parcel C is ready for closing." The trial court found that the buyers were not entitled to specific performance because they asked for specific performance as to all parcels only when Parcel C was available to close. The court added that "[i]t is impossible for any party to this suit to enforce the contract" with regard to Parcel C. However, the buyers alleged in their sworn Complaint that it was the misconduct of the sellers that prevented their ability to close on Parcel C. The evidence of record does not refute the buyers' allegations of collusion by the sellers and does not establish that the buyers are precluded, as a matter of law, from obtaining specific performance. Thus, we reject the trial court's conclusion that there were no genuine issues of material fact.
Lindahl also asserted in his affidavit that FBL Land Trust met all requirements for closing, that the closing date was January 15, 2003, and that he (as trustee) demanded closing. However, Lindahl's affidavit did not address whether the parties had agreed that the buyers would not be in default until all three parcels were ready for closing. The buyers alleged in paragraphs S and 9 of their complaint, quoted above, that the parties understood that the buyers would not be in default until all three parcels were ready for closing. One clause in all three contracts called for a simultaneous closing. One addendum referred to the "interrelated" contracts. The HPI contract contained an addendum that extended the closing date to on or before sixty days from the issuance of the vegetation permit, which was issued on May 20, 2003.
Lindahl's affidavit did not address the interrelation among the three contracts and addenda or the allegation that the parties agreed to sell the three parcels *538 together when all three were ready to close.[3] Because genuine issues of material fact remain in dispute, Lindahl and HPI failed to meet their burden, as the movants, to obtain a summary judgment. Therefore, we reverse the summary judgment in favor of Lindahl and HPI and remand for further proceedings.

Conclusion
Because the trial court erred by entering summary judgments against the buyers, case numbers 2D05-131 and 2D05-1882 are reversed and remanded for further proceedings, and case number 2D06-3620 is dismissed as moot.
Reversed and remanded in part and dismissed in part.
FULMER and DAVIS, JJ., Concur.
NOTES
[1] The sworn Complaint alleged that although Cross Country assigned the contracts, it retained an equitable interest in the acquisition.
[2] Although the documents suggest that Barakot Ltd. may have solely owned Parcel C at the time the contract for sale was executed, because of the wording in the documents and in light of the record as a whole, we decline the buyers' invitation to declare that Barakot Ltd.'s ownership at the pertinent time is an undisputed, established fact.
[3] It also appears to still be in dispute which party was in default, if arty, and for what reason. Further, the issues relating to the sellers' alleged misconduct appear to remain unresolved.